CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellee, v. FRANK McELHANY et al., Appellants.

CARRIERS: Bills of Lading—Possession without Bill of Lading—
1 Transfer of Title—Effect. One who is not the consignee of a

shipment of goods, and obtains possession thereof without the consent of the carrier, and without taking up and presenting the accompaning bill of lading, can confer no title to anyone as against the carrier.

CARRIERS: Bills of Lading—Indorsement in Blank—Effect. Principle recognized that a bill of lading indorsed in blank confers title upon the holder.

CARRIERS: Bills of Lading—Delivery of Shipment without Demanding Bill—Evidence. The act of a carrier, in placing a car, containing a shipment, in a convenient place for unloading, does not necessarily evince an intention to deliver the shipment, without the surrender of the bill of lading, to a party to which it was not consigned, even though the car was so placed at the request of such latter party.

ESTOPPEL: Equitable Estoppel—Grounds—Inconsistency of Conduct—Carriers. Conduct, in order to furnish basis for an estoppel, must be shown to be *inconsistent* with the conduct in question. Therefore, in order to estop a carrier from insisting that possession of a certain shipment of goods was obtained without its consent, and without presenting the outstanding bill of lading, it must appear, when such is the claim, that the prior shipments which the carrier did deliver without demanding the bill of lading were substantially similar, in their attending conditions, to the shipment in question.

WITNESSES: Competency—Transaction with Deceased—Agent of Interested Party. An *agent* of a party to an action is competent to testify in behalf of his principal, and against an assignee, to relevant transactions with a deceased grantor. (Sec. 4604, Code, 1897.)

*Appeal from Superior Court of Cedar Rapids*—C. B. ROBBINS, Judge.

NOVEMBER 17, 1917.

REHEARING DENIED FEBRUARY 15, 1918.

ACTION in replevin to recover the possession of a certain automobile. Opinion states the facts. Judgment for the plaintiff in the court below. Defendant appeals.—*Affirmed.*

*Crosby & Fordyce,* for appellants.

*Grimm & Trewin, F. W. Sargent, R. J. Bannister,* and *J. G. Gamble,* for appellee.

GAYNOR, C. J.—This is an action in replevin, to recover the possession of a certain automobile which it is alleged was taken from the possession of the plaintiff, a common carrier, without its knowledge or consent, and without the surrender of a negotiable bill of lading covering its transportation. The petition was in the usual form of replevin.

1. CARRIERS: bills of lading: possession without bill of lading: transfer of title: effect.

After denying the allegations of plaintiff's petition, defendants interposed the following defense: That the defendant purchased said automobile from one Cowley, who, at the time of said purchase, had possession of it with the consent of the plaintiff; that he paid Cowley full consideration therefor, without notice or knowledge of plaintiff's claim. In an amendment to the answer, defendant alleged that, for a long time prior to the happening of the matters herein complained of, Cowley had been in the business of purchasing automobiles and having the same transported to him over plaintiff's railroad to Cedar Rapids, and there selling them at retail; that Cowley maintained a place of business in Cedar Rapids for the sale of automobiles; that all this was known to plaintiff; that it had been the custom and practice of plaintiff company to deliver Cowley automobiles without the prepayment of freight charges, and without requiring him to produce or deliver bills of lading, relying on Cowley's credit; that, pursuant to said custom and practice, Cowley obtained the possession of said automobile, with the knowledge and consent of plaintiff company, and had the same in his possession in his place of business at the time defendant purchased it; that the defendant purchased it from Cowley, and paid him in full

therefor without notice of plaintiff's claim; and that plaintiff is now estopped from claiming that Cowley had no right to the possession of said automobile, and no authority to sell it.

Upon the issues thus tendered, the cause was tried to a jury, and a verdict returned for the plaintiff for the possession of the automobile. Defendant appeals.

2. CARRIERS : bills of lading : indorsement in blank : effect.

The record discloses the following, without controversy: That, at the time of the transaction, Cowley was a retail dealer in Cadillac automobiles in Cedar Rapids, transacting business for himself in the name of the Iowa Auto & Tire Company; that the automobile in question was shipped by the Cadillac Company from its factory at Detroit, routed over plaintiff's lines, and consigned to itself or order at Cedar Rapids, with instructions to notify Cowley of its arrival. A bill of lading was duly issued by the initial carrier to said consignor. The bill of lading, with draft attached, was deposited in the bank in which the Cadillac Motor Company made its deposits, to be forwarded in turn to the bank upon which the draft was drawn. The bill of lading contained this:

"The surrender of this original order bill of lading, properly endorsed, shall be required before delivery of the property."

The bill of lading was endorsed in blank. Cowley was notified, and at his request, the car containing the automobile was spotted at a place convenient for unloading. Cowley did not get possession of the bill of lading, never had possession of the bill of lading, and never paid the draft. There is no direct evidence that the bill of lading and draft were, in fact, forwarded to the bank on which the draft was drawn. The natural inference from the evidence is that it was so forwarded. It is shown that the general custom was to so forward it, but the jury might well find

that there was no direct evidence that it was so forwarded. If not forwarded, it remained in the bank in which it was deposited, and, being endorsed in blank, it invested the party to whom it was delivered with title to the automobile, nothing further appearing. There certainly is no evidence that the bill of lading was ever delivered to Cowley, and it is not claimed that Cowley ever had this bill of lading in his possession. There is evidence from which the jury could find that he did not; that he never took it up, and never paid the draft. There is no evidence, therefore, that Cowley ever obtained any *title* or any *right* to the possession of this automobile. Up to this time, Cowley was a stranger to the title, and with no right to the possession of the automobile covered by the bill of lading. The evidence directly negatives the thought that Cowley ever had any title to this automobile, or any right to its possession as against either the Cadillac Company, the person holding the bill of lading, or the plaintiff company, holding the property for transportation. The defendant's defense rests solely on the thought, that, notwithstanding the fact that Cowley had no title to the automobile, no right to its possession, the plaintiff company, in whose possession it was, delivered it to him without requiring him to give any evidence of his title or right to possession. This was purely a fact question, and was for the jury. On this, the jury found for the plaintiff and against the defendant.

It is contended, however, by the defendant that he pleaded and introduced evidence to show that the company, under like conditions and circumstances, had previously delivered automobiles to Cowley, and that it was now estopped, as against this defendant, an innocent purchaser, from asserting that Cowley did not have the right of possession, and did not have the right to receive and dispose of the property in the usual course of business.

Cowley did not get possession of, and never presented the bill of lading to the plaintiff. There is no evidence that

he notified plaintiff that he intended to take the automobile before delivering the bill of lading. There is no evidence in this case that the company consented to the taking of the automobile from the car without the delivery of the bill of lading. The only evidence of consent is that the car in which the automobile was shipped was placed at an unloading station at the request of Cowley. The automobile was removed from the car by one of Cowley's agents, without notice to the plaintiff, and without first obtaining the bill of lading. Subsequently, Cowley sold this automobile to the defendant. The company did not discover the fact of removal until some time afterwards. Thereupon, it brought this action to recover the possession. In the meantime, it. had been required by the Cadillac Company to pay for the car. It was gone, and the company could give no acount of it. There is no question in this case that the consignment was made to the order of the consignor, the Cadillac Company. It is shown that the bill of lading, with draft attached, was deposited in the bank at which the consignor made its deposits, in the usual course of business, with intent that it be forwarded. The bill of lading, with the draft attached, was not taken up, but was returned. Thereupon, a claim was made against the transporting companies for the value of the car, and this was paid.

3. CARRIERS: bills of lading: delivery of shipment without demanding bill: evidence. It cannot be rightly said, and is not claimed, that the carrier, plaintiff, could, by mere delivery to Cowley, pass to him the title and right of possession, as against the true owner. But it is claimed that, inasmuch as the plaintiff had possession of this property and surrendered its possession to Cowley, and inasmuch as Cowley, after acquiring possession from said company, sold it to this defendant, an innocent purchaser, this plaintiff is now estopped by this act from claiming that Cowley obtained possession wrongfully, or did not have the right to the possession of it. So we start the consideration of the

case with the thought that Cowley had neither title nor right of possession before delivery to him by the plaintiff, if any delivery was made; and the question for determination on this issue is whether the plaintiff did deliver this automobile to Cowley in violation of its instructions, and thereby invest him with the possession and apparent title, and is now estopped to assert to the contrary.

This is a fact question. There is no evidence of actual delivery by the plaintiff or its servants to Cowley. The only fact upon which an inference of intent to deliver could rest is that, at the request of Cowley, the plaintiff placed the car in which the automobile was contained at a place where it could be conveniently unloaded. There is no evidence that the plaintiff or any of its agents assented or consented to defendant's taking it from the car without presenting the bill of lading evidencing title in himself and right to possession. Under the record made, the jury could well have found that it was taken possession of from the car by certain of the employees of Cowley, without the knowledge or consent of the plaintiff company. There is no evidence that Cowley requested leave to remove it, or that he asserted to the company any right to the possession in himself before or at the time of taking possession.

The court, in its instructions to the jury, said:

"The sole question you are to determine, in arriving at your verdict in this case, is whether or not the said automobile was delivered to the said Cowley by the agents of the plaintiff, without requiring the presentation of said bill of lading."

And he thereupon instructed the jury that the plaintiff, as carrier, had the right to the possession of the automobile in question until the bill of lading was presented to it showing Cowley to be entitled to the possession, and further said:

"If you find from the evidence that the agents of the
Vol. 182 Ia.—66

plaintiff did intend to deliver, and did in fact deliver, said automobile to the said Cowley without requiring the surrender of the said bill of lading, then your verdict should be that the defendant is entitled to the possession of said automobile."

But the court said that the placing of the car containing the automobile at an unloading platform, was not, in itself, a delivery; but that fact might be considered by the jury in determining whether there was, in fact, a delivery.

4. ESTOPPEL: equitable estoppel: grounds: inconsistency of conduct: carriers.

Complaint is made of the action of the court in saying to the jury that the only question in this case was whether the plaintiff actually delivered this automobile to Cowley, thereby investing him with the apparent ownership of the automobile, with its resultant estoppel, and in not permitting the jury to consider the evidence tending to show that, at prior times, this same plaintiff company had permitted Cowley to take possession of automobiles shipped by the Cadillac Company over plaintiff's lines, without first delivering the bill of lading.

The facts under which former deliveries were made are not in the record; nor were the conditions shown to be the same as attended this claimed delivery. The best that can be said for this evidence is that, in three instances, there were cars brought from the possession of the plaintiff company to Cowley's garage, while the bills of lading, and sometimes the drafts attached to them, were in Cowley's safe at his garage. In each of these instances, it appears that Cowley had bills of lading that invested him with title and right to possession. Mr. Cowley was dead at the time of this trial. The witnesses testified to cars' being received by Cowley from this plaintiff company while the bills of lading for the cars remained in his safe, and said they knew nothing of the arrangements made by Cowley with the company before that time, or what security he gave to obtain their

possession. This evidence does not even tend to show that the plaintiff company ever delivered any automobiles to Cowley shipped under bill of lading, as this automobile was shipped, consigned to others, without his securing the company in some way against loss, in the event the bill of lading was not forthcoming. Of course, if this record had disclosed that it was customary, upon the arrival of cars at Cedar Rapids, and over this company's lines, for this company to notify Cowley of the arrival, and thereupon spot the car for him, and permit him to take the automobiles from the car without further action on its part, a different question would arise. But here, there is no evidence except that, on three occasions, cars shipped and consigned to Cowley were taken by Cowley without his having first delivered to the company the bill of lading. In this case, there was affirmative evidence that Cowley neither had the title nor the right to the possession of this property. There is no evidence that the company ever delivered the property to him, except such as might be found in the evidence that the car was spotted for unloading at his request.

The mere fact that cars were taken by Cowley, prior to this time, without requiring him to deliver the bill of lading, under circumstances not shown to be in any way the same as those attending this transaction, has no tendency to prove that the plaintiff delivered to Cowley this car, consigned, not to Cowley, but to another, with a negotiable bill of lading outstanding, without requiring Cowley to produce the bill of lading, or show any right in himself to the possession. It had no probative force upon the question: to wit, that plaintiff delivered this automobile to Cowley without requiring him to surrender the bill of lading. It is clear that, if Cowley obtained this automobile from the possession of the plaintiff without having himself invested with any title or right to possession as against anyone, he could not, by so taking possession and thereafter

selling it, confer upon the purchaser any higher right than he himself had; and the facts here do not show an estoppel as against this plaintiff to so assert. While the carrier may waive a provision of a bill of lading requiring the surrender of the same before delivery of the property, there can be no presumption indulged in that he did so. There is no presumption that a man voluntarily acts against his own interest and to his own prejudice, and one who asserts that he did so assumes the burden of proof.

It is next contended that the court erred

5. WITNESSES: competency: transaction with deceased: agent of interested party.

in the introduction of testimony, in that it permitted one Smith, chief clerk of the plaintiff company, and another clerk of the plaintiff's, to testify to personal transactions between themselves and the defendant's vendor, Cowley, deceased, at the time of the trial. This objection is predicated on the provisions of Section 4604 of the Code. An examination of this statute will show that the agent of the party is not within the inhibitions of the statute.

There are other errors assigned, but they do not affect any substantial right of the defendant's, and we do not, therefore, discuss them.

On the whole record, we think the case should be, and it is,—*Affirmed.*

WEAVER, PRESTON, and STEVENS, JJ., concur.