J. D. COWAN, Appellee, v. THE ALLAMAKEE COUNTY BENEVOLENT SOCIETY et al., Appellants.

No. 46228.

MARCH 16, 1943.

B. A. Schwarzhoff and H. Haehlen, both of Waukon, for appellants.

Hart & Hart, of Waukon, for appellee.

SMITH, J.—The facts are peculiar. The undisputed evidence is that appellant The Allamakee County Benevolent Society is an unincorporated association. But no question is raised in the record as to its capacity to contract and to be sued; nor is any

issue presented as to its right to conduct an assessment life insurance business, either under chapter 400, Code of Iowa, 1939, or under any other authority.

█ Both appellee and appellants have proceeded upon the theory that the case is maintainable in equity, just as if the society was in fact incorporated and authorized to transact business.

The contract is not between the society on the one hand and its members on the other, but is, on its face, one between and among the members themselves: "* * * who each severally, but not jointly, mutually agree to and with each other—each to contribute within thirty days after the death of a subscriber to the person named by such deceased subscriber or their legal heirs, the sum of one dollar."

No constitution or bylaws are shown, no machinery or procedure is provided, so far as the record reveals, for collecting assessments and disbursing benefits, and there appears no formal organization or set-up composed of officers and directors. Appellant Schwarzhoff's name appears upon the combined membership certificate and application as "Acting Secretary-Treasurer." There is no record of any provision for meetings of members or any showing as to Schwarzhoff's actual relationship to the society or how he obtained his official position.

We shall, however, treat the case as it was treated by both parties and the trial court and proceed as if the association was in fact qualified to conduct the business it assumed to carry on.

Stella Cowan, wife of J. D. Cowan, appellee, was a member of the society at the time of her death. The contract provided:

"I further agree that in the event of death caused by cancer * * * during the first year of my membership, my membership shall be void and my beneficiary shall receive no benefits upon my death."

This provision raises the one clear question to be determined, Did the insured, Stella Cowan, die of cancer "during the first year" of her membership?

The trial court ruled that the burden of going forward with

the evidence was upon appellants and no complaint of that ruling is urged.

Appellants contend that the death of insured *did* occur "during the first year" of her membership and that it *was* "caused by cancer." They have to establish both propositions in order to defeat the action. Both are fact questions, the only legal consideration involved being concerned with the admissibility of evidence.

■ I. Stella Cowan joined the society in 1935. She died April 25, 1942. But appellants claim that in the fall of 1941 she ceased to be a member by reason of nonpayment of assessments, that she did not join again until February 9, 1942, and that therefore her death occurred "during the first year" of her membership.

The witness Steele testified that Mrs. Cowan signed the new application in the early part of 1942. Appellee objected to the evidence on the ground that the witness was incompetent under section 11257, Code of Iowa, 1939. There is no showing that the witness was a party to the suit or "interested in the event thereof" or that he sustained any such relationship to the case as to disqualify him as a witness to testify to personal transactions with the decedent. True, he was an employee or agent of appellants, but that does not bring him under the ban of the statute. University of Chicago v. Emmert, 108 Iowa 500, 79 N. W. 285; Chicago, R. I. & P. R. Co. v. McElhany, 182 Iowa 1035, 165 N. W. 67; Range v. Mutual L. Ins. Co., 216 Iowa 410, 249 N. W. 268.

■ II. Furthermore, the "dead man statute" for another reason does not apply. Appellee does not come within any of the protected classes designated by the statute. He is the surviving spouse of the insured, but he did not bring suit in that capacity. He sued as the beneficiary of the insurance contract. He is not protected by the statute. See Beed v. Beed, 207 Iowa 954, 222 N. W. 442; Cahalan v. Cahalan, 82 Iowa 416, 48 N. W. 724.

■ III. We have, however, the problem of deciding whether the transaction testified to by Mr. Steele was in fact the creation of a new membership or in legal effect a mere rehabilitation

or reinstatement of an existing one. Under the record shown by the testimony of appellants' own witnesses, Mrs. Cowan was still a member when Mr. Steele called on her prior to the signing of the new application. She was in default, but still a member. There seems to be no doubt that she could have been put in good standing by payment of arrears amounting to seven dollars and without any question of her then condition of health.

Appellant Schwarzhoff himself testified:

"Sometimes she would not contribute within the time period stated in the notice. When members fail to do so sometimes a solicitor would contact them and have them reinstated by paying in their back debts—if they were back generally two or more deaths we took them in as a new member. If they are past the age limit of 55 I may have permitted them to pay all back notices and continue their membership."

Appellants' agent, Steele, told appellee and his wife that they could be reinstated by paying up "all back dues." He testified:

"They were talking about hard times. I suggested to her that she come in as a new member and he pay up all his back dues and be reinstated."

Mrs. Cowan availed herself of the device suggested by the appellants' agent. There was no suggestion that she had ceased to be a member. No action had been taken terminating her membership. Although she was in arrears, appellants had continued to send her notices of further assessments. They were proposing to accept back dues. She was to all outward appearance a member, though in default.

If her original membership ever terminated in her lifetime it was *at the moment* she signed, and *because* she signed, the new application. There can be no valid argument that it had been terminated by reason of nonpayment of assessments.

What, then, was the legal significance of the transaction of February 9, 1942? Surely the written application does not embody the entire contract. It purported to create a new membership in favor of one who was already a member. It must be

read in the light of the circumstances and of the intentions and purposes of the parties.

In our opinion there should be applied to this transaction the familiar rule of construction in favor of insured and against insurer that is applied to ambiguous insurance contracts, especially where questions of forfeiture are involved. We know of no case in point as to facts but the principle is too well established to require extended citation of authorities. See Parker v. Iowa Mutual Tornado Ins. Assn., 220 Iowa 262, 260 N. W. 844.

The transaction must be construed most favorably to insured. We should, if possible, avoid a construction that would imply forfeiture of her then existing membership, either for nonpayment of dues or by reason of the signing of an application for a new membership. The name given an instrument or a transaction by the parties thereto is not controlling. Looking behind the form to the substance of what was done, we cannot view the transaction as the creation of a new membership. The parties clearly had no such purpose. It was a device for continuing the membership already existing. That being true, the cancer clause in the policy had no application.

■ IV. Under the record we are also constrained to hold that there was not sufficient competent evidence to establish that Mrs. Cowan's death was in fact due to cancer.

Appellant Schwarzhoff testified appellee admitted to him that the doctors told him (appellee) they had found ''it was cancer of the gall bladder.'' Appellee denies any recollection of having made this admission to Schwarzhoff. Even if we were to assume the evidence of this admission was competent, appellee's denial is to be weighed against it.

But we do not deem the evidence admissible. It was not direct evidence of the cause of death. It was merely an admission of the purported making of a statement by the doctor to appellee. The doctor's statement, if made, was itself in the nature of an opinion. If the fact that the doctor made the statement were itself a material fact to be proven against appellee, the evidence of the admission by appellee would, of course, be competent, but it was not admissible on the question of the cause of death.

In a recent California case, that court says:

"Ordinarily this type of statement would not be an admission; that is, a statement describing another's declaration is normally not regarded as an admission of the fact asserted by the other." In re Estate of Gaines, 15 Cal. 2d 255, 262, 100 P. 2d 1055, 1058.

We have here an alleged admission of appellee, not of the existence of a fact but of a statement of opinion supposed to have been made to him by another. The general rule concerning admissions is that they are competent when they constitute admissions of the existence of relevant matters of fact. See 22 C. J. 297; 31 C. J. S. 1025.

■■ On cross-examination of appellee he testified (over objections) to what was actually told him by the doctor and that the doctor used the word "malignant" or "malignancy." This was not proper cross-examination and the evidence was inadmissible. It related to a confidential matter that the doctor himself could not have testified to. There was no waiver by appellee. He testified over his own objections. Dr. Rominger's testimony, based on knowledge derived by him as Mrs. Cowan's physician, was also privileged and inadmissible, as was also his testimony of the contents of a certain "confidential medical report" which will be referred to hereafter.

■■ V. Appellants offered in evidence a copy of the death certificate, identified as such by Dr. Rominger who made the certificate. It recites a number of things which did *not* cause death and states that death "was due to *natural causes* more fully described in the confidential medical report that accompanies this certificate." That separate "confidential medical report" was not a part of the death certificate and was not offered in evidence.

It appears however that the copy of the certificate bears an endorsement, purporting to be made by "Eric P. Pfeiffer, M. D. M. P. H., Director, Division of Vital Statistics," which assumes to state what really was the "cause of death" which "appears on this record."

This endorsement may have been based on the "confidential medical report." It was not a part of the death certificate and

was not certified as such. Its maker spoke from no personal knowledge. At most it was a statement of something contained in another document, not in evidence, and possibly confidential in character.

We need not pass here upon the question of the admissibility in evidence of death certificates which contain statements by the doctor of facts which because of privilege he could not testify to directly. We make no pronouncement on that question.

The death certificate here did not reveal the cause of death and has no probative value; the endorsement was not admissible.

For all the reasons stated we find the decision of the trial court was right, and it is—Affirmed.

All JUSTICES concur.