Jerome Litow, d/b/a St. Charles News Agency, The News Service and Geneva News Agency, Plaintiff-Appellant, v. The Aurora Beacon News, a Corporation, Defendant-Appellee.

Gen. No. 11,898.

Second District.

July 9, 1965.

Rehearing denied August 26, 1965.

Redman, Shearer & Gorecki, of St. Charles, and William T. Kirby, of Chicago, for appellant.

Reid, Ochsenschlager, Murphy & Hupp, of Aurora (L. M. Ochsenschlager, William C. Murphy and Stephen J. Mrkvicka, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

This is an appeal by the plaintiff, Jerome Litow, a newspaper distributor, from an order dismissing, with prejudice, his amended complaint against defendant, the Aurora Beacon News, a newspaper publishing company. The basis of the dismissal was the ruling of the trial court that none of the eight counts in the amended complaint stated a cause of action, and it is the propriety of this ruling that we are called upon to determine in this appeal.

The defendant's newspaper is published in Aurora, and it appears that most of its circulation is there. However, the paper is also distributed in St. Charles and Geneva. For a number of years, the plaintiff has been the distributor of defendant's newspaper in the St. Charles and Geneva areas. There are eight counts in the amended complaint. The first four counts pertain to the St. Charles distribution routes. The last four counts contain identical allegations concerning the Geneva routes. Since the issues are identical in each set of counts, we will simply discuss counts 1–4, and our remarks will also be understood to apply to the corresponding allegations in counts 5–8.

Count 1 is filled with historical detail, and we will simply state the substance of it here. The plaintiff has owned a newspaper distribution business in St. Charles for 15 years, during all of which time he has distributed the Aurora-Beacon News. He obtained the distribution of the Beacon News by purchasing the news agency which had previously distributed it in St. Charles. The purchase was made only after secur-

ing the consent and approval of the defendant. After he acquired the routes, Litow expended substantial effort and money to expand the circulation of the paper in the St. Charles area, with the result that the circulation has grown over the past fifteen years. Much of the increase in circulation has been due to the growth of the population in the St. Charles area. Litow solicited new residents in outlying areas at a time when the new homes were widely scattered. The outlying subscribers resided at such distances from each other that distribution by automobile was the only feasible method. Now that the subdivisions in the area are built up and compact, it is possible to distribute the papers with boys on bicycles at a considerably lesser expense then was formerly involved. It is alleged that many of the new residents of the St. Charles area were unfamiliar with the defendant's newspaper, and that their interest in the paper was created as a result of the solicitation efforts by Litow.

In the course of building up this circulation, Litow compiled route lists which were used by his employees in the distribution of the paper. He buys the newspapers from the defendant, with no allowance for returns, and then sells the papers to his newsboys, whom he protects against losses on collections from subscribers. In a majority of cases, Litow bills the customer directly and pays the boys for their services.

Paragraph 6 of count 1 alleges that:

> "All of the aforesaid works and expenses to Jerome Litow and all of the aforesaid benefits to The Aurora Beacon News, were done by Jerome Litow and accepted by The Aurora Beacon News with full knowledge of and in reliance upon the custom and usage in the newspaper industry that the distributor. . . ."

On May 31, 1963, Litow received a letter from the defendant, informing him that his services would no

130

longer be required in the distribution of the paper in the St. Charles area. He was later informed that the defendant would take over distribution of the newspaper without payment of any compensation to him. During the third week of June, 1963, the defendant asked Litow for a current list of all subscribers in the St. Charles area. Litow refused to turn over the lists, contending that they were his private property. However, the defendant already had the lists it wanted. In February, 1961, the defendant had secured the lists "by representations to Jerome Litow that a list of all the customers of The Aurora Beacon Newspaper in the areas served and distributed by Jerome Litow was needed in order to complete a telephone soliciting plan to increase the newspaper's circulation; and that no other use would be made of such lists."

Count 1 further alleges that after the defendant terminated its relationship with Litow, it solicited his newsboys to work for defendant in the distribution of the paper, using the lists previously secured from Litow. The complaint alleges that defendant is now using the lists and soliciting the newsboys for the purpose of taking over the distribution routes previously purchased and expanded by Litow. It is further alleged that these activities of defendant will continue unless an injunction is issued.

The prayer of count 1 is for an injunction restraining the defendant from (1) using the route lists, (2) securing any further route lists from the newsboys and (3) soliciting Litow's newsboys to work for defendant in servicing the routes they previously serviced for Litow.

Count 2 realleges the allegations of count 1, and adds the charge that the defendant is "seeking to appropriate (the plaintiff's distribution routes) and hold the same to its own unjust enrichment, to the damage of the plaintiff in the sum of $20,000." This count prays for damages in that amount.

131

Count 3 repeats most of the allegations of count 1 and prays for $20,000 damages on the ground that the defendant was guilty of fraud in obtaining plaintiff's route lists by the false representations previously mentioned.

Count 4, again, realleges most of the paragraphs of count 1 and alleges further that plaintiff's distribution of the paper was a "property interest." It prays for $20,000 for damages for the loss of this property interest.

The basic question argued by the parties is whether or not these counts of the amended complaint sufficiently alleged the existence of a contract. Defendant says there is no contract and concludes that, therefore, there has been no breach and plaintiff has no right to recover. The plaintiff, on the other hand, contends that the complaint sufficiently alleges a contract, implied in fact, for the breach of which he is entitled to recover.

■ ■ The defendant argues that the complaint merely alleges the existence of a custom and usage, and that it fails to allege that the parties contracted with reference to this custom and usage. Defendant's point is that, while custom and usage may be relied upon to explain the terms of a contract actually made by the parties, it cannot be relied upon to create a contract where none exists without it. We would agree with defendant that mere allegations of custom and usage would not be sufficient to allege the existence of a contract. However, we do not agree with defendant that this complaint merely alleges the existence of a custom and usage. Paragraph 6 of count 1, realleged in every other count, alleges that Litow performed services and defendant accepted his services "with full knowledge of and in reliance upon the custom and usage" that the routes would be recognized as having value to the distributor and would not be

taken from him without payment of compensation equivalent to their going value on a per customer basis. While the matter might have been stated more exactly, we think this allegation sufficiently states that the parties each acted with intent to be bound by the known custom and usage of the trade. This is quite different from simply saying that a custom and usage existed, without any allegation that the parties knew of it or intended to be bound by it. See 15 ILP, Customs and Usages, section 6, p 441.

 It is, of course, not alleged that the parties expressly agreed to deal with each other in accordance with this custom and usage. However, it is not necessary to allege this in order to allege the existence of a contract. The distinction between an express contract and a contract implied in fact has been well stated in a number of cases. See, e. g., People v. Dummer, 274 Ill 637, 640–641, 113 NE 934 (1916).

> "A contract is an agreement between competent parties, upon a consideration sufficient in law, to do or not to do a particular thing. (2 Blackstone's Com 442; 2 Kent's Com 449; 1 Parsons on Contracts, sec 1.) It may be express where the terms of the agreement are declared by the parties in writing or verbally at the time it is entered into, . . . . A contract may be implied where an agreement in fact is presumed from the acts of the parties, and this is the proper meaning of an implied contract. . . . The only difference between an express contract and an implied contract in the proper sense is, that in the former the parties arrive at an agreement by words, either verbal or written, while in the latter the agreement is arrived at by a consideration of their acts and conduct. (2 Page on Contracts, sec 771.)"

See also City of Chicago v. Pittsburgh, C., C. & St. L. R. Co., 146 Ill App 403, 410 (1st dist 1909); In Re Estate of Brumshagen, 27 Ill App2d 14, 23, 169 NE2d 112 (2d dist 1960).

The defendant argues that the complaint fails to allege mutuality of obligation, and therefore there can be no contract. The contention is that there is no allegation Litow was required to continue distribution of the papers, and, since Litow could terminate his part of the arrangement at will, the defendant had the corresponding right to terminate Litow at will. We believe this argument misapprehends what is alleged in the complaint and also misapprehends the law concerning mutuality. As to the complaint, plaintiff's theory is not that defendant breached the contract by terminating his distributorship. The theory, rather, is that the breach occurred when defendant terminated the distributorship without payment of the compensation to which plaintiff was entitled. Plaintiff does not contend that he had a right to continue distributing the papers indefinitely, or, indeed, for any period of time. His only contention is that when he was terminated he had the right to be compensated for the going value of the routes at that time. Therefore, the fact that defendant was not bound to continue distributing the papers for any period of time has nothing to do with the cause of action he alleges.

██ Moreover, there is no requirement that there be mutuality of obligation, so long as there is mutual consideration. See Armstrong Paint & Varnish Works v. Continental Can Co., 301 Ill 102, 108, 133 NE 711 (1922):

> "While consideration is essential to the validity of a contract, mutuality of obligation is not. Where there is no other consideration for a contract the mutual promises of the parties constitute the consideration, and these

134

promises must be binding on both parties or the contract falls for want of consideration, but where there is any other consideration for the contract mutuality of obligation is not essential. If mutuality, in a broad sense, were held to be an essential element in every valid contract to the extent that both contracting parties could sue on it, there could be no such thing as a valid unilateral or option contract. Such contracts have long been recognized as valid contracts in Illinois, (Hayes v. O'Brien, 149 Ill 403; Adams v. Peabody Coal Co., 230 id. 469); and the great weight of authority established by modern decisions is to the same effect. 6 RCL 686; 13 Corpus Juris, 336; Cooper v. Lansing Wheel Co., 94 Mich 272, 54 NW 39."

In the instant case, it is alleged that Litow did furnish consideration—that is, he expended time and money in building up the newspaper routes. It is further alleged that this is the very consideration for which defendant bargained.

■ As we have noted, count 1 prays for injunctive relief. Such relief has been held proper in cases involving wrongful appropriation of customer lists and solicitation of employees, Boylston Coal Co. v. Rautenbush, et al., 237 Ill App 550 (1st Dist 1925); Holsinger, Theis & Co. v. Holsinger, 329 Ill App 460, 69 NE2d 360 (4th Dist 1946); 21 ILP, Injunctions, section 93, pp 598–599, and we feel that count 1 states a cause of action which could warrant the relief prayed for.

■ ■ As to the sufficiency of count 3, which alleges procurement of the customer lists by a false representation, defendant simply says that, since Litow no longer has the routes, he has no use for the lists and thus has lost nothing of value. We do not take

135

this view of the matter. As we have already indicated, the complaint does sufficiently allege that Litow had contractual rights with regard to the routes and the customer lists. Count 3 alleges that defendant knowingly made a false representation with intent to deceive the plaintiff, and that plaintiff relied upon this representation to his damage in furnishing the lists to defendant. This count, therefore, does allege the necessary elements of fraud, and it should not have been dismissed.

Counts 2 and 4 are substantially repetitions of the basic allegations of count 1, and are grounded upon the theory of a contract implied in fact. The term "unjust enrichment" as used in count 2, would, we think, be more appropriate in an action based upon the theory of *quasi contract,* or a contract implied in law. There is no suggestion by plaintiff that he has alleged such a cause of action in any count of the complaint. Rather, as indicated, his theory is based upon the existence of an actual contract, albeit one implied in fact. Count 4 refers to damages to plaintiff's "property interest" in the distribution routes. We do not see how this count differs materially from count 2. One has the impression that plaintiff wanted to be sure he covered all of the bases, so he used a variety of terms. However, we do not think he has really alleged alternate theories of recovery in counts 2 and 4. The crux of both counts is the breach of the implied contract to compensate plaintiff for the routes. Plaintiff is entitled to proceed on one or the other of these counts, but he should elect between them. No motion was made by defendant to require an election, and the fact that the counts are repetitious is no ground for dismissing both of them. Therefore, on the remand of this case, plaintiff should decide which of these two counts is best suited to implement his desire to sue for an alleged breach of a contract implied in fact.

136

The judgment of the lower court is reversed and remanded for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

ABRAHAMSON, P. J. and CARROLL, J., concur.