**Jerome H. KITCHEN, Appellee,**

v.

**STOCKMAN NATIONAL LIFE INSUR-ANCE COMPANY, Appellant.**

**No. 54663.**

Supreme Court of Iowa.

Dec. 15, 1971.

John D. Randall, Cedar Rapids, for appellant.

Nazette, Bromwell, Hendrickson, Marner & Humphreys, Cedar Rapids, for appellee.

RAWLINGS, Justice.

Action at law by plaintiff, Jerome H. Kitchen (Kitchen), seeking damages from defendant, Stockman National Life Insurance Company (Stockman), for breach of employment contract and recovery of unreimbursed moving expenses. By counterclaim defendant seeks reimbursement for portion of moving costs paid on plaintiff's behalf. Trial to the court resulted in judgment for plaintiff and dismissal of the counterclaim. Defendant appeals. We affirm.

The basic question posed is whether plaintiff's employment by defendant was for an initial period of one year or at will.

The latter part of 1966, while employed by another life insurance company and residing in Roseville, Michigan, Kitchen was contacted by Dick Evans, Stockman's Director of Manpower Development, regarding employment with Stockman as its branch manager at Cedar Rapids, Iowa.

Ensuing negotiations culminated in delivery to Kitchen in Roseville of a letter dated March 30, 1967, from Evans (plaintiff's Exhibit 1), with which there was transmitted a same date "Letter of Understanding" (plaintiff's Exhibit 2), signed by Roy F. Dulin, Stockman's Agency Vice-President. Two days later, pursuant to Evans' instructions (plaintiff's Exhibit 1), Kitchen signed and returned to Dulin the aforesaid "Letter of Understanding". It states:

"Effective April 1, 1967 you are hereby appointed Branch Manager for our Company Office in Cedar Rapids, Iowa. The salary for this position is $12,000.00 per year, plus 2% override on first year premiums produced by your full time men and received in cash at the Home Office.

"You will be reimbursed necessary expenses incident in carrying out the responsibility of this position, such as reasonable expenses for recruiting including advertising and lunches. Your office will be maintained and furnished at company expense, including telephone expenses. An advance of $100.00 will be given you to cover necessary operating expenses.

"Your moving expenses will be paid by the Company to move you and your family to Cedar Rapids, Iowa. You will be reimbursed 10¢ per mile for the transportation of your car from Detroit, Michigan to Cedar Rapids, Iowa. It will be necessary for you to move to Cedar Rapids as soon as you can locate a suitable residence for your family.

"You will be entitled to participate in our group insurance program commensurate with your salary.

"By accepting this appointment you have assumed the responsibility for the development of manpower, the production of new business and the servicing of old business within your assigned area.

The Company will expect a reasonable quota of production and will allocate a reasonable budget for the operation of your branch office.

"Our Agency Department is composed of men of considerable experience, who will assist you in every way possible in developing your office. Our Director of Home Office Training and Recruiting will assist you by holding periodic schools in your area and will aid you in your recruiting program.

"May we take this opportunity to welcome you to the Stockman National Life family. We assure you that the services of the entire Home Office staff are at your disposal and all efforts will be made to help you obtain your goals."

Effective April 1, 1967, Kitchen terminated the association with his prior employer in order to accept the position with Stockman, and about April 4th opened an office for Stockman in Cedar Rapids. Kitchen there immediately recruited salesmen and performed other tasks incident to the opening and operation of these quarters.

April 17th Kitchen received from Dulin personally a $500 advance check from Stockman to aid Kitchen in securing Cedar Rapids housing accommodations.

April 18th Dulin, while visiting in Cedar Rapids, told Kitchen a proxy fight was pending within Stockman but they had the situation under control and Kitchen should proceed as planned.

May 18th Kitchen moved his family to Cedar Rapids as directed. He was reimbursed by Stockman for all but $204.80 of the attendant expenses. A day or two after arrival in Cedar Rapids, with his family, Kitchen received from Dulin a communication (plaintiff's Exhibit 5), bearing date May 19, which, in relevant part, states:

"I have tried repeatedly to contact you by telephone since yesterday morning but since you have not returned my calls to date I must take this means to inform you of the latest Company plans.

"The Company has decided to close the office in Cedar Rapids and to terminate all field employees who now draw a salary. * * * [T]his letter is to notify you that your employment with Stockman National Life Insurance Company will be terminated officially on May 31, 1967.

"The Company has agreed to assume the expense of transporting your personal belongings from Cedar Rapids to Detroit and they will pay any expenses you have incurred on behalf of the Company. You will be paid your regular salary through May 31st and you will be mailed your final check on that date. The $100.00 advance on out-of-pocket expenses which you received will be deducted from the paycheck. In addition to this, it will be necessary that you return the $500.00 loan, less any payments that have been deducted from your paychecks, as soon as possible.

"* * *

"Dick Evans will be in contact with you this weekend to make any necessary arrangements for closing out your office, and also to take charge of any manpower that has been recruited."

Kitchen encountered difficulty in securing regular remunerative employment within the ensuing year.

In course of trial Stockman attempted to introduce in evidence, as a business record, an unsigned interoffice memorandum (defendant's Exhibit 25), bearing date June 12, 1967, purportedly from Dulin to Tom Gentry, Stockman's President. This exhibit is nothing more nor less than a collation of Kitchen related events commencing April 1st, as remembered by Dulin, with attendant opinions allegedly expressed by Dick Evans.

Gentry testified, but neither Dulin nor Evans were called as witnesses. Kitchen's

hearsay and self-serving objections to Exhibit 25 were sustained.

As best we can determine from defendant's argumentative assignments, it here contends trial court erred in (1) overruling defendant's motion to strike all testimony regarding existence of a contract and claimed damages for any part of 1968, because it was violative of the Statute of Frauds, Code § 622.32; (2) sustaining plaintiff's objections to defendant's Exhibit 25; (3) overruling defendant's motion for a directed verdict premised upon absence of any right to recovery of damages by plaintiff because the contract was terminable at will; (4) finding and holding contrary to the pleadings and evidence regarding moving expenses and award of damages.

These asserted errors will not necessarily be considered separately or in the order assigned.

I. Prefatorily this court said in Beneficial Finance Company of Waterloo v. Lamos, 179 N.W.2d 573, 578 (Iowa):

"In a law action tried to the court as here, our review is not de novo but only on errors assigned. Under this limited extent of review the findings of fact by the trial court have the effect of a special verdict and are equivalent to a jury verdict. If supported by substantial evidence and justified as a matter of law, the judgment will not be disturbed on appeal. Rule 344(f) (1), R.C.P. Stated in other words, in a law action tried to the court its findings of fact having adequate evidentiary support shall not be set aside unless induced by an erroneous view of law. It follows, the rule does not preclude inquiry into the question whether, conceding the truth of a finding of fact, the trial court applied erroneous rules of law which materially affect the decision. Alsco Iowa, Inc. v. Jackson, 254 Iowa 837, 840, 118 N.W.2d 565, 567; France v. Benter, 256 Iowa 534, 536, 128 N.W.2d 268, 270. We may also interfere when such findings are undisputed or no con-

flicting inferences may be drawn from them."

In the same vein, this court will not weigh evidence or credibility of witnesses. And the evidence will be construed in that light most favorable to trial court's judgment. Hamilton v. Wosepka, 261 Iowa 299, 304, 154 N.W.2d 164.

II. We entertain no doubt as to existence of a written employment contract between Stockman and Kitchen.

■ "An agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expression of the agreement. An integration is the writing or writings so adopted." 1 Restatement, Contracts, § 228. See 3 Corbin on Contracts, § 588, at 528.

■ Kitchen's Exhibits 1 and 2, *supra,* were unquestionably mailed to him. He in turn, without qualification, signed Exhibit 2 and returned it to Dulin as directed. This sufficed as an offer and acceptance. See Hunt & Co. v. Higman, 70 Iowa 406, 410, 30 N.W. 769; 17 Am.Jur.2d, Contracts, § 44; 17 C.J.S. Contracts § 41(b); 1 Corbin on Contracts, § 67; 1 Williston on Contracts, §§ 66, 71 (3d ed.).

Additionally, Kitchen did enter into and commence performance in accord with the terms of Exhibit 2, thereby further evidencing his acceptance of Stockman's offer. See Commercial State Bank v. Broadhead, 212 Iowa 688, 694, 235 N.W. 299; 17 Am.Jur.2d, Contracts, § 45; 17 C.J.S. Contracts § 41(d).

■ Furthermore, Stockman's employment offer by means of a "Letter of Understanding" does not detract from its status as an integrated contract. See Cowan v. Allamakee Ben. Soc., 232 Iowa 1387, 1392, 8 N.W.2d 433; 17 Am.Jur.2d, Contracts, § 268.

■ Also, plaintiffs' Exhibit 2 was a complete written expression of the offer made by Stockman to Kitchen. When un-

qualifiedly accepted by the latter a contractual relationship between Stockman and Kitchen was thereby effectively created. This in turn means, evidence by Kitchen in support of his breach of contract action was not precluded by the Statute of Frauds, Code § 622.32. See Nebraska Bridge Supply & Lumber Co. v. Conway, 127 Iowa 237, 240–241, 103 N.W. 122; 2 Corbin on Contracts, §§ 503, 508, 516.

■ Moreover, this conclusion is not adversely affected or made any the less appropriate by the fact that extrinsic evidence may be admissible for the limited purpose of interpreting any language or terms contained in the contract. See LaFontaine v. Developers & Builders, Inc., 261 Iowa 1177, 1182, 1183, 156 N.W.2d 651; Hamilton v. Wosepka, 261 Iowa 299, 305–314, 154 N.W. 2d 164; 17 Am.Jur.2d, Contracts, § 261; 2 Corbin on Contracts, §§ 498, 499.

III. But Stockman apparently takes the position the contract is unenforceable by Kitchen because mutuality of obligation is lacking. We are not so persuaded.

■ Stockman offered Kitchen a branch managership position, with attendant salary of $12,000 per annum, plus an override commission. As a part of that offer Stockman said to Kitchen, in effect, if this offer is accepted we shall expect you to develop suitable manpower, produce new and service old business, and achieve a reasonable production quota. See plaintiff's Exhibit 2, *supra*.

Kitchen unquestionably accepted this offer and in so doing said to Stockman, in effect, I will open the Cedar Rapids branch office for you, develop suitable manpower, produce new and service old business, and achieve a reasonable production quota.

So we have here an offer and acceptance, or promise for promise, which gives rise to a legal duty of each party to the other. And a breach thereof by either party would give rise to a cause of action by the other. See LaFontaine v. Developers & Builders,

Inc., 261 Iowa 1177, 1186, 156 N.W.2d 651; Meurer Steel Barrel Co. v. Martin, 1 F.2d 687, 688 (3d Cir.); Litow v. Aurora Beacon News, 61 Ill.App.2d 127, 209 N.E.2d 668, 671–672; Palmer v. New York Herald Co., 228 App.Div. 176, 239 N.Y.S. 619, 626; 1 Corbin on Contracts, § 144; 1A Corbin on Contracts, §§ 152, at 13, 154; 3A Corbin on Contracts, § 684, at 229; cf. Des Moines Blue Ribbon Distributors v. Drewrys Ltd., 256 Iowa 899, 906–907, 129 N.W.2d 731.

IV. Next to be determined is the period or duration of Kitchen's employment.

As heretofore revealed the "Letter of Understanding" provides in substance, to the extent here relevant, (1) Kitchen was appointed branch manager in Cedar Rapids at a salary of $12,000 per year, plus 2% override on first year premiums; (2) Stockman directed that Kitchen move, with his family, to Cedar Rapids upon their locating suitable housing, and attendant expenses would be paid by Stockman; (3) Kitchen could participate in Stockman's group insurance program commensurate with the aforesaid salary; (4) Stockman expected Kitchen to bring in new and service old business in the area, and produce a reasonable quota of sales; (5) Stockman's training and recruiting director stood ready to assist Kitchen.

Under these circumstances a factual interpretation is involved. See Whatham v. Precision Boring Co., 220 N.Y.S.2d 134, 136; 1 Williston on Contracts, § 39 (3d ed.).

■ Trial court concluded Kitchen was instantly employed for an initial period of one year. We agree.

It is to us apparent Restatement, Second, Agency, § 442, is here applicable. It provides:

"Unless otherwise agreed, mutual promises by principal and agent to employ and to serve create obligations to employ and to serve which are terminable upon notice by either party; if neither party

terminates the employment, it may terminate by lapse of time or by supervening events."

Then in Comment b. thereunder is this statement:

"The fact that a servant or other agent is employed under a contract which merely specifies a salary proportionate to units of time which are commonly used for the purposes of accounting or payment, such as a month or a year, does not, of itself, indicate that the parties have agreed that the employment is to continue for the stated unit of time. Such a specification merely indicates the rate at which the salary is earned or is to be paid, and either party is privileged to terminate the relationship at any time unless further facts exist. However, the fact that payment is to be made in accordance with a time unit is evidence, in connection with other relevant facts, indicating that the agreement is for such unit. *Thus, an agreement for the period of time mentioned as that for payment, or as the basis for payment, is indicated * * * if the agency is an important one and of a kind such that a temporary appointment would not be likely to be made; or if, as the principal has notice, the employee has made an important change in his general relations in order to accept the position, such as the removal of himself and his things to a new place; or if he has given up a position of some value in order to enter the employment.*" (Emphasis supplied).

Mindful of the foregoing we turn again to the record which reveals Kitchen, with Stockman's knowledge, terminated his employment with another insurance company in order to accept Stockman's offer; commenced working for Stockman April 1, 1967; as expected and later directed by Stockman, moved his family from Roseville, Michigan, to Cedar Rapids where he established an office, undertook recruitment of personnel and otherwise entered upon the performance of assigned agency duties; and suffered a termination of employment with Stockman May 31, 1967, only because of its newly revised management philosophy.

From this flows the unavoidable conclusion, both parties hereto anticipated, understood and intended the initial contractual period of employment was not temporary or at will, but rather for an initial period of one year. See Whatham v. Precision Boring Co., 220 N.Y.S.2d 134; Delzell v. Pope, 200 Tenn. 641, 294 S.W.2d 690, 694–695; 17 Am.Jur.2d, Contracts, § 486; 1 Corbin on Contracts, § 70, at 293–296; 3A Corbin on Contracts, § 684; 1 Williston on Contracts, § 39, at 121 (3d ed.). For a thorough analysis of the varying views which have been employed in this area of the law see Annot. 161 A.L. R. 706; 42 Colum.L.Rev. 108; 48 Mich.L. Rev. 80; 47 North Carolina L.Rev. 710; 24 Tenn.L.Rev. 1188.

■ V. It is therefore self-evident Stockman's absent good cause termination of Kitchen's employment within the initial one year period constituted a breach of contract. For this Kitchen was entitled to judgment for all wages past due and future promised earnings, less what was or could be reasonably earned by him in similar employment for the remainder of the initial one year, plus unpaid moving expenses. See LaFontaine v. Developers & Builders, Inc., 261 Iowa 1177, 1189, 156 N. W.2d 651; 4 Corbin on Contracts, § 958; Simpson, Treatise on Contracts, §§ 187–188, 195 (2d ed.); Restatement, Contracts, § 312; 17 Am.Jur.2d, Contracts, §§ 441–446; 22 Am.Jur.2d, Damages, § 70.

VI. Stockman's claim to the effect trial court erroneously sustained Kitchen's objections to Exhibit 25 is without merit.

■ In order to be admissible in evidence under Code § 622.28 as a memorandum or record of an act, condition or event to prove facts stated therein, Exhibit 25 must have been made in the regular course of business at or about the time of the act,

condition or event recorded. It is also essential the sources of information from which made, and circumstances and method of preparation be so shown as to indicate trustworthiness.

The record discloses, however, Exhibit 25 was prepared by Dulin June 12, 1967, regarding events which purportedly occurred at least three weeks prior thereto.

It is also doubtful this unsigned exhibit was made in the regular course of business, or as a matter of routine to reflect regular business transactions. Rather it takes on all the colorations of an isolated internal memorandum. See 46 Iowa L.Rev. 276, at 286.

There is no need, however, to premise our instant conclusion upon the foregoing observations. Trial court held the requisite business record foundation had been established but, in effect, found an adequate trustworthiness showing had not been made. See Code § 622.28.

And as we said in Nadler v. Treptow, 166 N.W.2d 103, 105 (Iowa): "The rules governing the admission of written memoranda or records are procedural and considerable discretion is vested in the trial judge in determining admissibility. (Authorities cited)."

 In light of the foregoing there is to us no premise upon which to hold the evidential exclusion of Exhibit 25 constituted an abuse of judicial discretion.

 Stockman further contends the trial judge erred in refusing to examine the subject exhibit when offered in evidence. Assuming, without deciding, such refusal to inspect the proffered document was improper, it still remains the foregoing contention affords Stockman no basis for reversal. The exhibit was sealed and certified to us on this appeal. We have examined it and find therein, aside from a possible minor conflict with Stockman's letter to Kitchen (Exhibit 5, *supra*), nothing other than that which was essentially revealed in course of trial. Error, if any, last above asserted was devoid of prejudice. See Dunlap & Co. v. Anderson, 153 Iowa 488, 489–490, 133 N.W. 910; 5 Am.Jur.2d, Appeal and Error, §§ 800, 806.

VII. Stockman's last assignments of error, apart from those heretofore considered and determined adverse to it, appear to be, (1) Kitchen's petition is fatally deficient; (2) there is a vitiating variance between his pleading and proof.

At the outset we observe Kitchen's petition was not challenged or subjected to a motion for more specific statement prior to trial. See Rules 111, 112, Iowa R.Civ.P.

Dealing with that matter in Halvorson v. City of Decorah, 258 Iowa 314, 319, 138 N.W.2d 856, 860, this court said:

"Where a doubtful pleading is directly attacked by motion before issue is joined or in the answer as permitted by rule 72, Rules of Civil Procedure, it will be resolved against the pleader. (Authorities cited). If, however, the petition does allege ultimate facts upon which plaintiff might recover and states a claim under which evidence may be introduced in support thereof, or if attack is delayed, the petition should be construed in the light most favorable to the plaintiff with doubts resolved in his favor and the allegations accepted as true. (Authorities cited)."

See Ke-Wash Company v. Stauffer Chemical Co., 177 N.W.2d 5, 8–9 (Iowa).

Neither was legal sufficiency of Kitchen's pleading effectively raised in Stockman's motion for a directed verdict at close of the evidence.

Although the aforesaid petition is not a model pleading, Stockman's belated complaint here is of no avail. See Continental Illinois National Bank & Trust Co. v. Security State Bank, 182 N.W.2d 116, 119 (Iowa); Volkswagen Iowa City, Inc. v. Scott's, Inc., 165 N.W.2d 789, 794–795 (Iowa).

We have, however, examined the petition in that light most favorable to Kitchen and find it not susceptible to Stockman's delayed attack.

Furthermore, variance, if any, between pleading and proof is immaterial unless shown to have prejudicially misled the opposing party. Rule 106, Iowa R.Civ.P.

As in Rank v. Kuhn, 236 Iowa 854, 859, 20 N.W.2d 72, no showing is here made upon which to hold Stockman was misled to its prejudice.

VIII. It is to us evident trial court's findings of fact have adequate evidentiary support, and were not induced by application of erroneous rules of law which materially affect the ultimate decision.

Affirmed.

All Justices concur.