R. W. Miller, Appellee, v. C. Durant Jones, Appellant.

MASTER AND SERVANT: Wrongful Discharge—Failure to Secure
1 Employment—Cross-Examination. One testifying to a wrongful discharge, and his inability to secure steady future employment, should, on cross-examination, manifestly be permitted to give answer to the question whether he had not secured employment immediately after the discharge.

MASTER AND SERVANT: Wrongful Discharge—Misconduct as
2 Defense—Evidence. A master may show conduct on the part of his servant detrimental to his (the master's) interest, in defense to an action for wrongful discharge, and it follows that it is error to strike such evidence from the record.

EVIDENCE: Hearsay—Master and Servant—Wrongful Discharge.
3 In an action for damages for wrongful discharge, testimony by plaintiff as to what an entire stranger to the transaction told him as to the probability of plaintiff's early discharge, and the reason therefor, is pure hearsay.

MASTER AND SERVANT: Wrongful Discharge—Justifiable Dis-
4 charge. A discharge of a servant by the master is justified by

conduct on the part of the servant which has a *tendency* to injure the master's interests, or which *might* reasonably lead to such injury.

**TRIAL:** Instructions—Applicability to Issues—Wrongful Discharge of Servant. Instructions not applicable to any issues raised by the pleading are manifestly erroneous. So held in an action by a servant for wrongful discharge.

*Appeal from Perry Superior Court.*—W. W. CARDELL, Judge.

THURSDAY, OCTOBER 26, 1916.

ACTION to recover damages for defendant's wrongful discharge of plaintiff from his (defendant's) employ. The defendant admitted the discharge, but pleaded that such discharge was for due cause. Upon the issues joined, the case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*S. Trevarthen* and *H. G. Giddings,* for appellant.

*Dugan & Dugan,* for appellee.

DEEMER, J.—I. Plaintiff was employed by defendant, as assistant manager of what was known as the Jones Cement Works, for the term of one year, from and after April 1, 1913, at the rate of $100 per month, for the first nine months, and $33.33⅓, for the remainder of the year, payable at the end of each month.

Plaintiff entered upon his employment, and, on July 18, 1913, defendant discharged him. Plaintiff claims that the discharge was without cause, and he seeks, in this action, to recover the agreed compensation for the full term, less what he was able to earn during the period for which he was employed.

Defendant had purchased the cement plant at a receiver's

sale, growing out of an action in which plaintiff herein was plaintiff, and one Van Patten was defendant. It seems that the two men, at one time, owned the plant which finally came into defendant's possession. During plaintiff's employment, he allowed Van Patten to take away some posts, which defendant claimed he had not purchased. Plaintiff was also absent (so it is claimed) from the plant several days at a time, without defendant's consent. On June 19, 1913, plaintiff wrote defendant the following letter:

"Perry, Iowa, June 19, 1913.

"Mr. C. Durant Jones, Perry, Iowa. Dear Sir: I hereby order that you are not to pay any more money to H. M. Shively, receiver, or to the superior court for the purchase of the cement plant of Miller & Van Patten, unless you are willing to lose all you pay for said property, as we will be there to object to said sale, as said sale was made through fraud. (Signed) R. W. Miller, member of said firm."

Plaintiff, without the knowledge or consent of the defendant, also stopped some other employees from hauling sand to the plant. These things, testified to by defendant, and corroborated, to some extent, by others, were the reasons for plaintiff's discharge.

Plaintiff denied being absent from the plant, save with defendant's knowledge and consent; said he knew nothing of Van Patten's taking the cedar posts, although he affirmed that these posts had been sold to one Fife, before defendant Jones bought the plant; and, while admitting that he wrote the letter to Jones, before quoted, said that he did it to protect his (Jones') interests, because Van Patten told him he was going to try to have the sale to him (Jones) set aside for fraud, and to save him (Jones) from paying the balance of the purchase price. He also testified that the reason Jones gave him for discharging him, was that he (plaintiff) gave

testimony damaging to him (Jones) in a suit by Van Patten to set aside the sale of the plant. Defendant also denied having directed men hauling sand to quit, because no more cement blocks were to be made. Upon the issues joined, the case was submitted on this testimony, plus some evidence tending to corroborate defendant, with the result heretofore stated.

II. After plaintiff had testified that he had only been able to get short jobs of work, during the year for which he was employed, he was asked, on cross-examination, if he did not, immediately thereafter, find employment, but was not permitted to answer. We think the question should have been answered, subject, of course, to explanation by plaintiff.

1. MASTER AND SERVANT: wrongful discharge: failure to secure employment: cross-examination.

One Riddle was produced as a witness for defendant, and was asked this question, to which he made the response as shown:

"Did Mr. Miller ever make any statement to the effect that he would knock out the sale of the plant to Mr. Jones,— that he could get more money? A. I had a conversation with him one evening, and he said that Van Patten had gone into it and they were going to get it back; he thought there was some fraud in it."

2. MASTER AND SERVANT: wrongful discharge: misconduct as defense: evidence.

On plaintiff's objections, the last clause of the answer was stricken out. This was clearly error. It was a statement by Miller as to an attempt by him and Van Patten to set aside the receiver's sale.

Again, plaintiff was permitted to give in evidence, over defendant's objection, the following statement, made by one Mitchell, a stranger to the transaction:

3. EVIDENCE: hearsay: master and servant: wrongful discharge.

"A. He said he wanted to give me a little tip. He says 'I think you are going to get discharged in a little while,' and he says, 'Keep this to yourself, but I think Jones is going to get his brother here as manager.'"

This was clearly hearsay testimony, and manifestly prejudicial to the defendant; for it had a tendency, if believed by the jury, to cause it to think that the reason for plaintiff's discharge was that he (Jones) wanted to make a place for his (Jones') brother.

III. The thirteenth instruction given by the trial court reads as follows:

4. MASTER AND
SERVANT:
wrongful discharge: justifiable discharge.

"You are instructed that, if you find, from a preponderance of the evidence, that plaintiff, without excuse, conducted himself toward the defendant as alleged by the defendant in one or more of the particulars thereof, and his conduct was such as to be injurious to the interests of the defendant to retain him in his service, then the defendant had the right to discharge him, and he is not entitled to recover."

We are disposed to think this instruction erroneous. It was not necessary that plaintiff's misconduct should have, in fact, injured the defendant. It was enough that it had that tendency, or might reasonably have led to his injury. Defendant did not have to wait until injury was done, before discharging the plaintiff. If plaintiff's conduct was such as to indicate that his interests were hostile to those of his master, it was the right of the master to discharge him, before any injury was, in fact, done. The instruction was properly excepted to, and should not have been given in this form. It is well settled that a servant must do nothing in hostility to his master's interests. If he defrauds his master, or attempts to do so, or lends himself to aid others in defrauding him, or exposes the master to danger of loss, even though none is in fact sustained, the master may discharge him, for violation of an implied condition of his contract; and so the master may discharge him if he places himself in relations with others that are inconsistent with his duties to the master, or such as to jeopardize his interests. *Adams Express Co. v. Trego*, 35 Md. 47; *Deane v. Cutler*, 20 N. Y. Supp. 617.

In other instructions, the court told the jury that it might

find for plaintiff, in any event, for services already performed,

5. TRIAL: instructions: applicability to issues: wrongful discharge of servant.

for which he had not been paid. There was no issue of this kind in the pleadings, and no testimony to justify such instructions.

For the errors pointed out, the judgment must be, and it is,—*Reversed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.