ELMER ATTIG et al., Appellants, v. INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, CHAUFFEURS, STABLEMEN AND HELPERS
OF AMERICA, LOCAL No. 90, et al., Appellees.

No. 45619.

November 18, 1941.

Rehearing Denied March 20, 1942.

Frank D. Bianco and Reed & Elick, for appellants.

Addison M. Parker, for appellee Grocers' Wholesale Co-op., Inc.

John Connolly, Jr., George E. O'Malley, Irvin I. Schlesinger, and C. I. McNutt, for all other appellees.

Sager, J.—For convenience appellees will be referred to as Local No. 90. The Grocers' Wholesale Co-op., Inc., being somewhat in the position of the innocent bystander, will have no attention. Some or all of the appellants have been members of a union termed Warehouse Union 18381. About 1938 by a "one-sided" vote members were transferred to Local No. 90, an affiliate of the American Federation of Labor. The shift did not appear to be as advantageous as they thought it would be. Dissatisfaction arose among a group of which appellants were members. Things came to a climax on or about April 11, 1939, when Houke and appellant Attig received notices by registered mail to appear before the executive board in Des Moines at 10 o'clock a. m., April 25, 1939. This notice stated that it was the two weeks notice required by international bylaws, and cited the sections which enumerate the charges against them. Enclosed with the notice was a copy of the constitution and bylaws of the union. While it is claimed by appellants that no specific charges were made, this move on the part of the union was construed by the dissidents as intending to suppress discontent and discussion.

Thereupon, for purposes which are differently construed by the parties, twenty-nine members of the union, among them appellants, turned their cards over to Houke, a prominent and respected member of the group. All but these appellants got their cards back in the progress of further events and returned to work. Appellants argue that their surrender of their cards was for a temporary purpose only and as a protest against any action which might be taken against Houke. Appellees on the contrary say that it was the purpose of appellants to surrender their membership in the union and either form an independent one or join a competing one. There is no dispute that advances were made to the C. I. O. These were rejected.

About 9 o'clock p. m. on April 13, 1939, two officers of Local No. 90 appeared at the home of Houke and demanded the cards which had been received by him. The parties differ as to the method employed to secure the result but the fact is that the cards were surrendered. Whether this was accomplished by the sweet persuasion of fraternal love as seems to be argued by appellees, or by threat of the mailed fist as appellants insist is not important now. The officers secured possession with results to be narrated.

On the morning of April 14th, when those without cards appeared to go to work, they found the plant substantially in control of appellees and members of other unions. They were told that they could not go to work. From this point the record becomes difficult and confused. This is to be expected as the witnesses attempted to tell what was said and done amidst much turbulence. Out of the confusion of the evidence the trial court could have found that all of the members were offered their cards back and that all but these appellants did accept them in due time and went back to work. We purposely omit the various details by which different groups reached that result.

On the morning of April 13th appellants and others who had not then taken their cards were told that they might come before the executive board on the morning of April 17th and then discuss and explain their actions. The board was in session nearly all that day but none of appellants appeared. Houke, who seems to have been the spearhead of the controversy, and others appeared and after some discussion took their cards

4

and returned to their jobs. Appellants take the position that neither the notice Attig had by mail nor the oral notice given to the others was in the form required by the constitution and bylaws, but in the view we take it is unnecesary that we discuss this. They claim, too, that the surrender by Houke of these cards to the union officers was accomplished by a method in total disregard of their union rights.

 Among the contentions of error made by appellants is that the court erred in sustaining a motion to strike a claim for damages from the other issues involved. Two reasons readily appear why no prejudicial error was committed here. The trial court gave them the right to file their action for damages on the law side of the calendar. They acceded and filed such petition which, so far as the record shows, is still pending. If this be not so, if their claim for damages had remained in this cause before us, under the views of the trial court, with which we agree, they had no cause of action anyway.

 Appellants argue that the court erred in dismissing their petition on the ground that the notices given Houke and Attig did not comply with the constitution and advise them of the charges against them. As has been said we find it unnecessary to enter into the details of this complaint. The trial court was justified in finding that these appellants were in fact offered the opportunity to come before the executive board and to present their complaints or to disclose their views as did the others who appeared and were restored to their membership. These appellants refused or at least failed to meet advances toward an amicable adjustment or to pursue any of the remedies provided for by the constitution and bylaws.

Again, their complaint that the action of the two officers who secured their cards from Houke was in violation of their rights both under the constitution and bylaws is lacking in weight because they had their remedy in the procedure laid down by the union constitution. It requires the citation of no authorities to support the principle that members who join a voluntary association such as this are bound by any regulations which do not contravene state and federal constitutions and state laws. The fact that the advantages expected to accrue from membership are not realized does not change the rule. Here it was expressly provided:

"Any member or Local in good standing, or the General Executive Board, may prefer charges in writing, setting forth the facts constituting such charges.

"Charges against a member shall be preferred in duplicate to the Executive Board of his Local Union, etc."

And if justice be not found there, this further remedy exists:

"If a Local Union refuses or neglects to try a member the charges may be preferred to the Joint Council, the defendant shall be notified by registered letter and given a reasonable time to prepare for trial. A complainant or defendant who is aggrieved by a finding or penalty imposed by the Executive Board of a Local Union may appeal to the Joint Council."

Appellants cite Nissen v. International Brotherhood, 229 Iowa 1028, 295 N. W. 858, as authority for the proposition that the pursuit of intra-union remedies is not a condition precedent to the bringing of a civil action in causes of this kind. A glance at that opinion distinguishes it from the case at bar. The extensive discussion of principles and authorities found in that decision makes it unnecessary to say more here. Here appellants made no attempt at any time to avail themselves of the rights given them in the union though they had plenty of time to do so. Having failed therein we think the trial court was right in deciding that they had no remedy against appellees.

Other errors on the part of the trial court are not discussed because if it was right thus far, and we hold it was, its decree is nevertheless correct though the court may have been mistaken in some of the reasons given for its ruling. Analysis of the cited cases is made unnecessary because of the discussion in the Nissen case, supra, and because this cause turns largely upon questions of fact where the views of the trial court are of much weight.

Finding the decree of the trial court right, it is affirmed. —Affirmed.

CHIEF JUSTICE and all JUSTICES concur.