**Andre J. LaFONTAINE and DeLoma LaFontaine, Appellees,**

v.

**DEVELOPERS & BUILDERS, INC., and Unique Cleaners, Inc., and Raymond R. DuPre, Appellants.**

No. 52843.

Supreme Court of Iowa.

Feb. 6, 1968.

As Modified on Denial of Rehearing April 9, 1968.

Kennedy, Kepford, Kelsen & White, Waterloo, for appellants.

Fulton, Frerichs & Nutting, Waterloo, for appellees.

LARSON, Justice.

In early 1960 Raymond R. DuPre became interested in buying Unique Cleaners, Inc. of Waterloo, Iowa, and obtained an option to purchase seventy-five percent of Unique's outstanding stock. He approached Andre J. LaFontaine in June of 1960 and offered

to exercise this option, employ him as plant manager, and sell him 60 shares of Unique stock.

Upon LaFontaine's acceptance, DuPre exercised his option and on or about June 20, 1960, LaFontaine commenced his employment and signed an agreement to purchase 60 shares of Unique stock, which agreement was later revised and superseded to provide for the purchase of DuPre's entire interest of 120 shares of Unique stock. This agreement, attached to plaintiffs' petition and marked Exhibit "A", provided as follows:

"The following Agreement executed this 16 day of June, 1961, by and between Developers & Builders, Inc., an Iowa Corporation with its principal place of business in Waterloo, Black Hawk County, Iowa, Party of the First Part, and Andre J. LaFontaine and DeLoma LaFontaine as joint tenants with full right of survivorship, of Waterloo, Black Hawk County, Iowa, Parties of the Second Part, this Agreement abrogating and superseding the Agreements of the parties hereto made on June 15, 1960 and on November 23, 1960, WITNESSETH THE FOLLOWING:

"THAT WHEREAS, Party of the First Part is the owner of One Hundred Twenty (120) shares of the stock of Unique Cleaners, Incorporated, an Iowa Corporation with principal place of business in Waterloo, Black Hawk County, Iowa, and

"WHEREAS, Party of the First Part desires to sell said stock unto Parties of the Second Part, and Parties of the Second Part desire to purchase said stock from Party of the First Part, at the price and in the manner and form hereinafter set forth.

"NOW, THEREFORE, THIS AGREEMENT:

"Party of the First Part does herewith sell unto Parties of the Second Part the said One Hundred Twenty (120) shares of stock of Unique Cleaners, Incorporated, and as payment therefor, Second Parties covenant and agree to pay therefor the sum of Eighty-one and 42/100 Dollars ($81.42) each and every week hereafter until June 15, 1970, and the sum of Sixty Dollars ($60.00) per week for a fifteen (15) year period thereafter, or until the death of the survivor of Raymond R. DuPre and Marie A. DuPre, whichever event (the expiration of said additional fifteen (15) year period or the death of the survivor of the said DuPres) shall last occur.

"All voting rights of said shares shall remain in Party of the First Part until fulfillment of the purchase terms as hereinabove specified.

"It is understood and agreed that a transfer of said shares has been executed in blank by Party of the First Part, to be delivered to Parties of the Second Part upon fulfillment of the terms hereof, or cancelled by Party of the First Part upon default in performance of any of the terms herein by Parties of the Second Part.

"Time is made of the essence of this Agreement, and failure on the part of Parties of the Second Part to strictly and punctually make payment as specified herein or make performance of any requirement herein to be made, shall at the option of Party of the First Part render this Agreement at such time null and void, and the rights of said Parties of the Second Part shall at such time cease and desist.

"This Agreement shall be binding upon the heirs, executors and assigns, as the case may be, of all of the parties hereto.

"IN WITNESS WHEREOF, the said parties have subscribed their names on this 16th day of June, 1961.

> "DEVELOPERS & BUILDERS, INC.
> By /s/ Raymond R. DuPre, President
> Party of the First Part
>
> "/s/ Andre J. LaFontaine
> /s/ DeLoma LaFontaine
> Parties of the Second Part."

In this suit, brought in equity, the trial court found an oral agreement of employ-

ment had been breached without just cause by the defendant DuPre, who was fully authorized and did speak for all defendants, and granted judgment to plaintiffs, Andre J. and DeLoma LaFontaine, in the sum of $22,064.82, denied defendants' prayer for foreclosure, and dismissed plaintiffs' claim based on unjust enrichment. Both parties appealed.

■ I. Our review is de novo. As the appellate court, we give weight to the fact findings of the trial court but are not bound by them. Rule 344(f) (7), R.C.P.

We are not sure, after a careful reading of the pleadings, the briefs and arguments of the parties, and the findings and conclusions of the trial court, whether the involved contract was considered a partially-integrated agreement or two independent agreements, one written and one oral. We suspect the former, and will so consider it in this appeal. No complaint is made of the finding that DuPre was fully authorized to act and speak for all defendants and we concur in that finding.

In their first proposition defendant-appellants contend the court erred in overruling their motion to dismiss filed at the close of all evidence. The correctness of this ruling, they concede, depends upon the validity of their propositions 2, 3 and 4, next considered.

■ II. In their second proposition defendant-appellants argue the trial court erred in holding that an implied contract of employment existed between LaFontaine and any of the defendant-appellants. They contend the court did not construe an existing agreement but created a new one, that the claimed agreement of employment was too vague, inexact, indefinite and nebulous as to the working hours of the employee to be legally enforceable, and that the claimed agreement of employment is entirely unilateral in that the plaintiff was in no respect bound to perform thereunder. We find no merit in these contentions.

The Plaintiffs' original petition filed September 7, 1965, named Developers & Builders, Inc. and Raymond R. DuPre as defendants and prayed for certain relief including an injunction to restrain the defendants from terminating LaFontaine's employment. A temporary injunction was granted ex parte and then dissolved on September 27, 1965.

On December 28, 1965, after being granted leave to amend their petition, the plaintiffs filed a substituted petition in three divisions and included Unique Cleaners, Inc. as a defendant. Division I alleged, in substance, that the defendants breached an employment agreement with LaFontaine by discharging him without justifiable cause and praying damages therefor. Division II alleged that the employment agreement was omitted from the written agreement between Developers and LaFontaine by mistake or by the misrepresentation of DuPre, and prayed for damages. Division III alleged a breach of an employment agreement and damages therefor and included an additional $15,000 damages for loss allegedly occasioned by plaintiff due to the fact that he relinquished his position in the competitive market. At the close of plaintiffs' case they asked and received leave of the court to add a fourth division wherein a count for unjust enrichment was alleged.

■ The parties are entitled to the benefit of that interpretation of their evidence, and of all reasonable inferences most favorable to their case, in an effort to prove the real intent of the parties to an agreement, and if reasonable minds may differ as to the conclusions to be drawn from that evidence, a question of fact exists. "The existence of a contract, 'meeting of the minds,' intention to assume an obligation, the understanding is to be determined not alone from words used, but in the situation, acts, and conduct of the parties, and from their situation and the attending circumstances, and by the inferences which mankind would ordinarily and reasonably draw therefrom." Kladivo v. Melberg, 210 Iowa

306, 313, 227 N.W. 833, 837, and citations. Also see Storck v. Pascoe, 247 Iowa 54, 62, 72 N.W.2d 467; In re Estate of Lindsey, 254 Iowa 699, 708, 118 N.W.2d 598; Port Huron Mach. Co. v. Wohlers, 207 Iowa 826, 221 N.W. 843; In re Estate of Newson, 206 Iowa 514, 219 N.W. 305.

 As pointed out in Smith v. Stowell, 256 Iowa 165, 174, 125 N.W.2d 795, there may be a contract implied in law on a point not covered by an express contract, but no such implied contract on a point fully covered by an express agreement. Clearly, the express agreement here did not cover the point as to employment or the term thereof, and parol testimony for the purpose of interpreting the full agreement was permissible. Hamilton v. Wosepka, Iowa, 154 N. W.2d 164. Of course, the rule is well established that where there is an express contract covering the subject matter, the law will not imply a quasi or constructive contract. Smith v. Stowell, supra, and citations. Here, however, we find the express agreement did not fully cover the subject matter of the agreement between the parties and the evidence was competent to establish the intent of the full agreement.

Appellees contend and the trial court found that the plaintiff LaFontaine and the defendant DuPre, who was then the holder of an option to purchase the controlling interest in Unique, entered into an oral agreement on June 15, 1960, and, contemporaneous with the written agreement to purchase Unique stock, agreed that LaFontaine was to work for Unique as its general manager at a salary which was to be large enough to permit him to take home $100 a week plus an amount sufficient to pay Developers $81.42 per week on a contract for the purchase of 60 shares of stock in Unique. It was understood that DuPre, on behalf of Developers, would exercise the option to purchase the 120 shares of stock in Unique, and in turn Developers was to enter into an agreement with LaFontaine whereby he would pay $81.42 per week for five years for 60 shares of stock. There is little or no dispute as to the evidence of these transactions and we agree with this determination of those transactions. Each of those proposals was carried out.

 It was the trial court's conclusion that the facts and circumstances revealed an implied term provision in the oral employment agreement between LaFontaine and Unique that LaFontaine was to be employed as above set out and that his employment would not be terminated during the life of the agreement with Developers, except for justifiable cause. We too find compelling reasons for this conclusion.

DuPre said he could not operate this business unless plaintiff or someone with experience in the management of such a plant was employed, and he sought plaintiff's services with inducements before he exercised his option to buy Unique Cleaners. It also appears from the evidence presented that LaFontaine was employed at Deluxe Cleaners when he was approached by DuPre, that he and one Lemmon were buying an interest in Deluxe, and that his take-home pay there was $100 per week plus an interest in profits. By way of inducement DuPre offered to match his present take-home pay and an amount sufficient to purchase 60 shares of stock in Unique.

DuPre said he did not remember the exact date of the Unique takeover and, when asked if LaFontaine was working for him on that date, DuPre replied: "Well, he might have * * *. He would have done the decent thing with his ex-partner. You know what I mean: He wouldn't leave him flat-footed. But on the other hand *I would not go in there without him.* So we had arranged some day that would be fair to his ex-partner, I'm sure." It is also evident that DuPre did not exercise his option to purchase Unique until he was assured of LaFontaine's employment.

 It is defendant-appellants' position that the court below did not construe the existing agreement, but created a new oral agreement of employment which included an

implied term to correspond to the written portion of the agreement. He cites and relies upon the cases of Mallinger v. State Farm Mut. Auto. Ins. Co., 253 Iowa 222, 111 N.W.2d 647, Smith v. Stowell, supra, and Carter v. Certain-Teed Products Corp., D.C., 102 F.Supp. 280, which among other things hold that an ambiguous contract may be construed but a new contract may not be made for the parties by arbitrary judicial construction. Although we adhere to this doctrine, we do not find it applicable here. Clearly, plaintiffs' position is that this agreement was only partially integrated and the construction sought was as to the oral provisions thereof. Obviously, the parties' agreement contemplated more than a mere sale of Unique stock to LaFontaine. As heretofore indicated, we are satisfied this was sufficient evidence upon which an oral agreement of employment could be maintained as well as support the implication as to its term.

In June 1961 the parties substantially changed the written portion of the original agreement to include the purchase of Du-Pre's entire interest, at a rate of $81.42 per week until 1970 and then $60.00 per week for an additional 15 years or until the death of both him and his wife, whichever event occurred last. Although there is nothing to indicate any change in the oral provisions of the agreement, it is reasonable to believe, under this extension beneficial to DuPre, the parties contemplated no change in the implied term provision and that LaFontaine was to continue in the employment for the additional period. As to this matter DuPre stated: "I paid him enough so he could [afford to pay $81.42 per week]. It didn't cost him anything. The business, had he stayed there until 1985 or longer, if my wife lived longer, wouldn't have cost him anything."

■ Equity courts will not hesitate to indulge in inferences which will avoid unfair or inequitable results. On this matter we have stated, " * * * that an agreement will not be construed so as to give one party an unfair, oppressive or inequitable advantage over the other, that unless the terms of the contract clearly require it, an interpretation will not be given which places one party at the mercy of the other, that courts will endeavor to give the contract that interpretation most equitable to the parties, * * *." Freese v. Town of Alburnett, 255 Iowa 1264, 1268, 1269, 125 N.W.2d 790, 793, and citations.

Bearing this rule in mind, after careful analysis of the record, it is our considered opinion that the agreement sued upon was a partially-integrated contract and that the interpretation given the oral provisions of the agreement by the trial court was correct.

Even if there was an oral agreement of employment, defendant-appellants contend it was too vague, inexact, indefinite, and nebulous as to hours per day and days per week to be performed, and rely upon the cases of Drake v. Block, 247 Iowa 517, 74 N.W.2d 577, and Lewis v. Minnesota Mut. L. Ins. Co., 240 Iowa 1249, 37 N.W.2d 316. We do not agree.

■ The Drake case dealt with a unilateral contract of employment. It was held therein that where an employment contract is indefinite as to time and the same lacks mutuality, it may be terminated at will by either party without incurring liability. In the case at bar there was no indefiniteness as to time and we hold the agreement here was bilateral. There was a promise for a promise, and both parties were under a duty to perform their promises. A breach by either would give rise to a cause of action for the other. The Lewis case dealt with a contract of employment for life and the court, recognizing that the standard of definiteness required for a contract of employment for life is higher than in an ordinary contract of employment for a period of time, held the evidence there was insufficient. This is not our situation.

LaFontaine was not an ordinary employee. He was skilled in the operation of dry cleaning plants, with many years of experience, and could run every phase of the dry cleaning operation if need be. He was hired as the plant manager and elected as president of the board of Unique. His responsibilities and duties could not be considered those of an ordinary employee. He was not required to work a standard eight-hour day, but, like most employees in the management spectrum, he had no set hours and worked until his tasks were completed. His employment in that capacity was to continue until 1985 or until the DuPres' interest was satisfied.

■ III. As their third proposition erred in failing to hold that LaFontaine violated and breached the employment provisions in the agreement and that his subsequent dismissal by defendant was justified. Perhaps the nub of this controversy is whether the defendant-appellants had good cause to dismiss LaFontaine from his employment with Unique Cleaners on or about September 29, 1965. Having decided LaFontaine was employed under oral provisions of their agreement, and that the implied term of employment coincided with the stock purchase part of the agreement, obviously his employment could not be terminated before the end of the term except for cause or by mutual agreement. Westerfield v. Liberty Oil Co., 208 Iowa 912, 223 N.W. 894; 56 C.J.S. Master and Servant § 29.

■ Usually, what constituted good and sufficient grounds for discharge is a question for the court under the facts and circumstances revealed. In an action for damages for an alleged wrongful discharge, the burden rests with the employer to prove such disobedience, misconduct, incompetence, or other justification for the dismissal. Miller v. Jones, 178 Iowa 168, 159 N. W. 671; 35 Am.Jur., Master and Servant, § 36.

It is defendant-appellants' position that when plaintiffs demanded the conveyance of 120 shares of stock in Unique Cleaners upon the tender of a sum equal to $81.42 per week until June 15, 1970, or the conveyance of 60 shares which represented the amount already paid to date, and brought suit to secure an interpretation of the parties' agreement, this conduct clearly indicated that LaFontaine's interest was sufficiently hostile to that of his employer that it gave DuPre the right to discharge him.

■ It is well settled that a servant must do nothing in hostility to his master's interests. Miller v. Jones, supra, 178 Iowa 168, 172, 159 N.W. 671. Although it is not clear when Mr. LaFontaine first became concerned about his employment and the status of his payments on the stock purchase contract, it does appear that on August 23, 1965, he was, by the action of Mr. and Mrs. DuPre, relieved as president and manager of Unique Cleaners. Thereafter he consulted a lawyer for an interpretation of his status under the parties' agreement and, upon the attorney's suggestion, he arranged to borrow sufficient money to prepay the ten-year payments on the stock. Defendants refused his tender and demand, suit was commenced to ascertain and establish rights under the agreement, and an ex parte order was obtained to prevent LaFontaine's discharge as an employee of Unique Cleaners. There was some testimony by Mr. Lemmon that in the summer of 1964 DuPre approached him about the possibility of his coming to work for Unique Cleaners, and that when asked what would become of LaFontaine, DuPre said, "We will kick him downstairs." This testimony was denied, but if believed this would indicate an attitude responsible for LaFontaine's apprehension. In any event, after the temporary injunction barring his dismissal was lifted, LaFontaine was promptly discharged.

■ The record disclosed no evidence of open conflict between these men. Mr. DuPre himself said, " * * * this man (Mr. LaFontaine) and I never had a cross

word between us." There is no charge or evidence of dishonesty, absenteeism, incompetency, insolence, or willful destruction of the business by either party. In fact, the business prospered. LaFontaine had never expressed dissatisfaction with their arrangement and agreement as he understood it, and his suit to secure immediate stock transfers would not amount to attempted extortion. It is reasonable to believe LaFontaine became concerned about their entire agreement. Since it was not all integrated, LaFontaine rightfully desired his status as an employee to be legally established. Under the circumstances, this suit was a reasonable means to determine the legal effect of their entire agreement, both in regard to employment and delivery of stock fully paid for. Did this suit indicate that his interests were sufficiently hostile to those of his master to justify his dismissal? We think not. We are satisfied that LaFontaine intended no harm to Unique or to the DuPres. Understandably, DuPre did not desire the money in a lump sum for tax reasons, the loss of corporate control, or the surrender of the life annuity it provided. He believed those items were adequately covered in the agreement. Understandably, LaFontaine desired security for his past payments and assurance that his employment would provide sufficient income to meet the agreed payments on the stock. Each thought their agreement so provided. The court cannot remake agreements for the parties, but it can and should, after hearing, interpret and declare rights under the entire agreement. To seek such relief is not necessarily a hostile manuever, and we do not find it was here.

■■■ Defendant-appellants argue some of plaintiffs' original allegations referred to fraud and mistake in the execution of the final stock purchase agreement, but they did not charge defendants intended to alter the employment agreement by any changes in the written agreement. Plaintiffs merely alleged that if it be claimed the revised written portion of the agreement did alter the oral employment provisions, the execution thereof would have been obtained by fraud or mistake. In any event, we find no evidence to support a charge of fraud by either party in this suit and no grounds which would justify LaFontaine's discharge as an employee of Unique Cleaners at that time. We are satisfied that defendants breached the agreement without just cause and became liable for damages to plaintiffs.

■■■ IV. Plaintiffs, of course, had the duty to show by proper measure of damage their loss due to the breach. The trial court correctly held that LaFontaine was entitled to the present value of the difference between the minimum salary he received under the agreement, which was shown to be $201.42 per week, and the amount he was able to earn in like employment thereafter, shown to be $127.50 per week, for the period from September 29, 1965, to June 15, 1985, but in no event to exceed the damages alleged and prayed in plaintiffs' petition. There was no evidence tending to prove the proper measure of damages for the breach of the stock sales agreement, but it is obvious the difference of $73.94 per week for almost twenty years alone exceeds the amount of damages asked, and the judgment for $22,064.82 from Unique Cleaners, Inc., should therefore be affirmed.

■■■ V. In their fourth proposition defendant-appellants contend the court erred in denying their prayer for cancellation or forfeiture of the stock purchase agreement. It is the general rule in this and in most jurisdictions that a man is permitted to make a contract which will result in a forfeiture, and when it is clear from the terms of the contract that the parties have so agreed, a court of equity, as well as a court of law, will enforce the forfeiture. 12 Am.Jur., Contracts, § 435. If one contracts for a forfeiture, while the law will scan it closely and will look upon it with disfavor,

yet as a part of the contract it must be enforced. Cowan v. Cowan, 247 Iowa 729, 736, 75 N.W.2d 920. While it is true forfeitures are not favored in the law, they are not outlaws. In Fairgrave v. Illinois Bankers Life Association, 211 Iowa 329, 334, 233 N.W. 714, 716, we said: "If the parties have by the terms of their agreement fixed the consequences of a forfeiture on the violation of it, this becomes the law of their contract and by it they are to be governed." Also see 17A C.J.S. Contracts § 407, page 497.

It is undenied that plaintiffs had made no payment on the contract to purchase this stock since the third week in September 1965, and under the agreement plaintiffs were in default unless excused by defendants' breach. After noting that the remedies prayed for by defendants in asking a decree of foreclosure are equitable in nature, the trial court concluded under the circumstances and facts in this case it would deny the forfeiture. It did not, however, afford plaintiffs any relief on the "written contract that they voluntarily entered into with the defendant corporation, Developers & Builders, Inc." and obviously felt they could have elected to continue to make those payments and eventually secure the stock in Unique.

■ Although it may be that plaintiffs could have waived defendant's breach of the sales provision of this agreement, and we find nothing in the agreement which prevented plaintiffs from making the payments set forth therein from sources other than LaFontaine's salary from Unique, or nothing which indicated that he had to be an employee of Unique Cleaners to make them, it appears plaintiffs elected to consider the entire agreement breached and sued for all damages, including their loss of payments

already made. In any event, it is clear that plaintiffs' claim for damages for a total breach of this agreement has been fully litigated and that they have no further claim to any shares of stock in Unique Cleaners. To deny defendants a clear title to these shares, we think, would not be equitable under these circumstances, and we hold the trial court should have entered a decree terminating the rights of plaintiffs in and to these stocks. To that extent the trial court's judgment and decree is now so modified.

■ VI. Having decided plaintiffs were allowed full damages as prayed for the breach of the entire agreement, and that they have no further right or interest in the involved 120 shares of Unique Cleaners stock, we need give little attention to plaintiffs' assignment of error for the dismissal of their claim for "unjust enrichment." Clearly, they elected their remedy and have been granted the relief they asked for the breach of the agreement. Under these circumstances a claim for unjust enrichment will not be granted. See Restatement of the Law of Contracts, Vol. I, Ch. 12, § 384(1); Miller-Piehl Co. v. Gibson Comm. Co., 244 Iowa 103, 110, 56 N.W.2d 25; Granette Products Co. v. Arthur H. Neumann & Co., 200 Iowa 572, 579, 203 N.W. 935, 937, 205 N.W. 205.

We conclude the trial court was correct in dismissing plaintiffs' Division IV alleging unjust enrichment and, with the modification required in Division V of this opinion, the judgment of the trial court is affirmed. Costs are to be assessed three fourths to defendants and one fourth to plaintiffs.

Modified and affirmed.

All Justices concur.