Hugh VAN HOSEN, Appellee,

v.

BANKERS TRUST COMPANY and Bankers
Trust Company, Trustee under certain Pen-
sion Plan and Trust Agreements with
Bankers Trust Company, Appellants.

No. 55046.

Supreme Court of Iowa.

Sept. 19, 1972.

Robert A. Gamble, of Gamble, Riepe, Martin, Webster & Fletcher, Des Moines, for appellants.

Samuel G. O'Brien and Don Muyskens, of Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for appellee.

RAWLINGS, Justice.

By action in equity plaintiff Hugh Van Hosen seeks declaratory relief from the forfeiture provision of a private pension plan established by defendant Bankers Trust Company and administered by it as trustee. Trial court adjudged the controverted proviso violative of public policy, therefore void and unenforceable. Defendants appeal. We affirm.

Van Hosen worked for defendant bank almost 33 years prior to his resignation in 1967. Starting as a messenger he ultimately became a vice-president and manager of installment loans. While so employed certain pension and profit sharing plans were initiated and at times amended by the bank. Among them was the instantly involved "Bankers Trust Company Primary and Supplemental Pension Plan and Trust Agreement". Relevant provisions thereof will be later set forth.

Upon termination of his aforesaid employment, plaintiff sold insurance with a Des Moines agency for about 18 months. He was then offered a position in the commercial loan department of another Des Moines bank, admittedly an institution in competition with defendant bank. Thereupon Van Hosen requested a waiver by defendant of the subject pension forfeiture clause. After some apparently unavoidable delay, during which plaintiff accepted proffered employment with the competing institution, his requested forfeiture waiver was refused. Defendant bank has since withheld retirement benefits payable to plaintiff under the plan here involved. Incidentally no issue regarding trade secrets is instantly presented.

In support of their appeal defendants contend, (1) the forfeiture provision is not a part of the plaintiff's employment compensation, and not in restraint of trade, (2) the court may enforce a forfeiture provision in a pension plan to that extent reasonably necessary to protect the employer's legitimate interest without imposing undue hardship upon the employee so long as public interest is not adversely affected. We shall deal generally with these propositions.

I. Any attempt to rationalize the fractionated postulates heretofore enunciated on the subject at hand would serve to unduly extend this opinion. See e.g., Rochester Corporation v. Rochester, 450 F.2d 118 (4th Cir.1971); Muggill v. Reuben H. Donnelley Corporation, 62 Cal.2d 239, 42 Cal.Rptr. 107, 398 P.2d 147 (1965); Van

Pelt v. Berefco, Inc., 60 Ill.App.2d 415, 208 N.E.2d 858 (1965); Kristt v. Whelan, 4 A.D.2d 195, 164 N.Y.S.2d 239, aff'd 5 N.Y.2d 807, 181 N.Y.S.2d 205, 155 N.E.2d 116 (1958); Food Fair Stores, Inc. v. Greeley, 264 Md. 105, 285 A.2d 632 (1972); 50 Cornell L.Q. 673 (1964–1965); 73 Harv. L.Rev. 625 (1959–1960); 57 Iowa L.Rev. 75 (1971); 61 Nw. U.L.Rev. 290 (1966); Annot., 18 A.L.R.3d 1246. See also Flynn v. Murphy, 350 Mass. 352, 215 N.E.2d 109 (1966).

II. Murphy v. R. J. Reynolds Tobacco Co., 260 Iowa 422, 148 N.W.2d 400 (1967), involved a problem akin to that instantly presented. In the cited case, 260 Iowa at 429, 148 N.W.2d at 403, we approvingly quoted this from Cantor v. Berkshire Life Ins. Co., 171 Ohio St. 405, 408, 409, 171 N.E.2d 518, 520, 521 (1960):

> " 'The concept of employees' rights and of the place of the so-called fringe benefits in relationship to employees' remuneration has undergone a substantial change in recent years.

> " ' * * *

> " 'There has been * * * in recent years a gradual trend away from the gratuity theory of pensions. The courts, recognizing that a consideration flows to an employer as a result of such pension plans, in the form of a more stable and a more contented labor force, have determined that such arrangements will give rise to contractual rights enforceable by the employee who has complied with all the conditions of the plan, even though he has made no actual monetary contribution to the fund.' "

To the same effect is 1A Corbin on Contracts, § 153, at 18–20:

> "A promise by an employer to pay a bonus or a pension to an employee in case the latter continues to serve for a stated period is not enforceable when made; but the employee can accept the offer by continuing to serve as requested, even though he makes no promise. There is no mutuality of obligation; but *there is sufficient consideration in the form of service rendered.* Indeed, the employer's offered promise becomes irrevocable by him as soon as the employee has rendered any substantial service in the process of accepting; and this is true in spite of the fact that the employee may be privileged to quit the service at any time."

See also Restatement, Contracts, § 45.

■ It is thus evident plaintiff's action stands squarely in contract and this is true whether defendants' pension program be characterized as a contributory or noncontributory plan.

III. These are the relevant portions of the Agreement here involved.

Under Article III "competing institution" is defined as a financial organization doing a correspondent bank business or any financial enterprise in Des Moines, Polk County, Iowa.

Article XI provides, in essence, a participating "member", upon completion of 20 or more years continuous regular service with defendant bank shall, upon leaving for any reason, have a vested right under the Agreement, subject to the following material part of Article XII:

> "In the event a Member shall become employed by a competing institution without the consent of the board of directors of the Bank, * * * then in * * * such event all of the rights of such Member, and the rights of any person claiming by, through or under such Member, to benefits under the terms of this Plan shall be *forfeited and terminated*; and, in the event that any annuity benefits shall have been purchased for such Member, such benefits shall be ter-

minated both as to the rights of such Member thereunder or the rights of any joint annuitant or other beneficiary thereunder and such benefits as may thereafter accrue under the terms of any such annuity shall be paid to the Trustee and applied by the Trustee to the costs of administering the Plan." (Emphasis supplied.)

■ "Forfeited", in the contractual sense, ordinarily means the taking away or loss of rights and interest in property. See Lange v. Farmers Federation Cooperative, Inc., 249 F.Supp. 544, 547–548 (W.D. N.C.1966); State v. Cowen, 231 Iowa 1117, 1122–1123, 3 N.W.2d 176 (1942); Arthur v. Trindel, 168 Neb. 429, 96 N.W.2d 208, 215–216 (1959); Grant v. Utah State Land Board, 26 Utah 2d 100, 485 P.2d 1035, 1037 (1971); 36 Am.Jur.2d, Forfeitures and Penalties, § 1; 37 C.J.S. Forfeitures § 1; Black's Law Dictionary at 778 (4th rev. ed.).

■ Forfeiture is also here unquestionably made positive and interminable by conjunctive use of the word "terminate". This terminology unquestionably denotes an expiration, extinction and cessation of all affected contractual rights. See Perruccio v. Allen, 156 Conn. 282, 240 A.2d 912, 914 (1968); 86 C.J.S., at 606; Black's Law Dictionary at 1641 (4th rev. ed.).

From the foregoing flows the unavoidable conclusion that under the terms of Article XII, if it be held enforceable, plaintiff forever lost any and all rights held under the Agreement by merely becoming an employee of a competing institution.

IV. Trial court likened Article XII to restraints on postemployment competition, sometimes contained in employer-employee contracts. In so doing the court leaned heavily on Baker v. Starkey, 259 Iowa 480, 144 N.W.2d 889 (1966), and thereupon found Article XII, being in restraint of trade, was violative of public policy, therefore unenforceable. But see Ehlers v.

Iowa Warehouse Company, 188 N.W.2d 368, 370–372 (Iowa 1971).

In that regard, as heretofore disclosed, various courts have recently espoused diametrically opposing views on the subject at hand. Some hold such a pension forfeiture clause as that now before us, unlike those restraints often embodied in employment contracts, does not preclude a benefited retiree from engaging in work for a competitor of the pension paying former employer, therefore is not in restraint of trade. See e.g., Rochester Corporation v. Rochester, 450 F.2d at 122–123, and citations. Other courts have held the threat of economic loss to a pension recipient by affiliation with a competitor of the former employer constitutes, in effect, an impermissible restraint on competition. See e.g., Food Fair Stores, Inc. v. Greeley, 264 Md. 105, 285 A.2d at 637–639.

For reasons later revealed, however, it is neither essential nor do we here adopt trial court's analogical approach, or the divergent concepts enunciated in Rochester and Food Fair Stores, supra.

■ V. It should be inceptionally understood:

"[A] man is permitted to make a contract which will result in a forfeiture, and when it is clear from the terms of the contract that the parties have so agreed, a court of equity, as well as a court of law, will enforce the forfeiture. 12 Am.Jur., Contracts, § 435. If one contracts for a forfeiture, while the law will scan it closely and will look upon it with disfavor, yet as a part of the contract it must be enforced. Cowan v. Cowan, 247 Iowa 729, 736, 75 N.W.2d 920. While it is true forfeitures are not favored in the law, they are not outlaws. In Fairgrave v. Illinois Bankers Life Association, 211 Iowa 329, 334, 233 N.W. 714, 716, we said: 'If the parties have by the terms of their agreement fixed the consequences of a forfeiture on the violation of it, this becomes the law of

their contract, and by it they are to be governed.' Also see 17A C.J.S. Contracts § 407, page 497." LaFontaine v. Developers & Builders, Inc., 261 Iowa 1177, 1189–1190, 156 N.W.2d 651, 659–660 (1968).

On the other hand, since forfeitures are not favored, those claiming them should show the equities are clearly on their side. See Babb's, Inc. v. Babb, 169 N.W.2d 211, 213 (Iowa 1969); Collins v. Isaacson, 261 Iowa 1236, 1242, 158 N.W.2d 14 (1968); Kilpatrick v. Smith, 236 Iowa 584, 593, 19 N.W.2d 699 (1945); Williams v. Havens, 92 Idaho 439, 444 P.2d 132, 139 (1968).

In the absence of a statute declaring void any such *in terrorem* provision as that contained in Article XII, and we have none, the enforceability of a contractual divestiture is usually determined by application of the public policy or reasonableness standard. This in turn necessitates a balancing of interests. See 5 Corbin on Contracts, §§ 1057, 1070; Simpson on Contracts, § 198 at 399–401 (2d ed.); Restatement, Contracts, § 339; 22 Am.Jur.2d, Damages, §§ 216–220; 25 C.J.S. Damages §§ 101c, 116b.

It also appears pre-estimated liquidated damages are, as a rule, similarly evaluated. See Perthou v. Stewart, 243 F. Supp. 655, 659–660 (D.Or.1965); Huntsman v. Eldon Miller, Inc., 251 Iowa 478, 481–482, 101 N.W.2d 531 (1960); Bauer v. Sawyer, 8 Ill.2d 351, 134 N.E.2d 329 (1956); Perkins v. Spencer, 121 Utah 468, 243 P.2d 446, 449–451 (1952); 5 Corbin on Contracts, §§ 1063, 1066. See generally May v. Young, 125 Conn. 1, 2 A.2d 385, 388–389 (1938).

So we resort to a weighing of interests in order to determine the enforceability or unenforceability of Article XII. If that proviso be found reasonable then it is enforceable. Conversely, in event such imposes an unconscionable burden on plaintiff it will be deemed unenforceable.

VI. First to be considered is defendant-employer's objective in providing for a divestment of pension rights acquired by a former employee who engaged in post-termination competition.

As indicated by the quote in Murphy v. R. J. Reynolds Tobacco Co., 260 Iowa at 429, 148 N.W.2d at 403, an employer's basic purpose in creating an employee pension program is to encourage loyal and productive career service on the part of all possible participants. In fairness it must be conceded that most if not all employers, like employees, are participating in a constant struggle for survival. To that end they must make every reasonable effort to gain and hold the good will of all possible customers.

It is thus apparent that in the organization and administration of an employee pension program an employer does have legitimate business interests at stake, including good will, as to which he is entitled to reasonable protection.

But there are counterbalancing factors which must also be evaluated.

Under existing economic conditions a person accepting employment will generally evaluate both take-home pay and fringe benefits. In any event, when a career employee retires, either voluntarily or involuntarily, he or she often experiences a traumatic economic change. Furthermore, many pensioners cannot, at the moment, qualify for social security and must resort to other employment for supplementary income. Usually, in such cases, work openings in the employee's accustomed field of endeavor are not readily available. And if such a position is obtained, comparatively inconsequential or no attendant marginal benefits are ordinarily provided, or ultimately acquired.

Also, while engaged in working for a second employer, such pension rights as may have been acquired during service with a prior employer are, to the retiree,

relatively insignificant. But when retirement from any subsequent employment occurs the result can be chaotic, absent restoration of any pension rights acquired through extended service with a prior employer. The harshness of such a situation is self-evident.

Moreover, private pension plans have a humanitarian purpose in that, like employment security, they extend to those benefited some degree of financial independence at a time when earning ability and related income may be impaired or ended. See The Code 1971, Section 96.2. It is in turn evident these programs have become increasingly vital to our socioeconomic community welfare. By the same token society today has a material interest in the orderly development and administration of all pension plans, public or private. Thus public policy comes into play. See In re Estate of Barnes, 256 Iowa 1043, 1051, 128 N.W.2d 188, modified on other grounds 130 N.W.2d 227 (1964).

It therefore follows, the infinite forfeiture and termination of all pension rights instantly acquired by plaintiff through prior affiliation with defendant bank, merely by accepting employment with a competing institution, imposes an unjust and incivic penalty on plaintiff at the same time disproportionately benefiting these defendants.

We now hold Article XII of the Agreement, being so unreasonable as to be in violation of public policy, is accordingly unenforceable.

VII. Trial court, in reaching the same result, did so upon a different premise from that here adopted. But such is of no consequence. See Denniston & Partridge Company v. Mingus, 179 N.W.2d 748, 755 (Iowa 1970).

Affirmed.

All Justices concur, except LeGRAND, J., who concurs in result.