Joel M. MURPHY, Appellee,

v.

AMERICAN FEDERATION OF GRAIN MILLERS, LOCAL NO. 6, Appellant.

No. 59724.

Supreme Court of Iowa.

Jan. 18, 1978.

Harry H. Smith and MacDonald Smith, Sioux City, for appellant.

Charles A. Coppola and Arthur L. Buzzell of Newport & Buzzell, Davenport, for appellee.

Submitted to MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and HARRIS, JJ.

HARRIS, Justice.

This suit for wages was brought by a discharged business agent of a local labor union. The union appealed following a jury verdict for plaintiff. We affirm the trial court.

On February 18, 1975 Joel M. Murphy (plaintiff) entered into a written contract to serve as business agent for defendant American Federation of Grain Millers, Local Union No. 6 (local 6). Plaintiff had previously served in the same position on a probationary basis. Local 6 represented its members in their employment relationship with the Clinton Corn Processing Plant of Clinton (the company).

The occasion of the written contract occurred during tumultuous times. Two union members had been discharged by the company and the company refused to rehire them. On the same day the contract was signed local 6's executive board called an illegal "wildcat strike" against the company because of the company's refusal to rein-

state the two discharged employees. As a result of the strike the company instituted a suit in federal court, against this plaintiff and other individual officers of defendant, seeking injunctive relief and damages. A temporary restraining order was obtained in federal court. When the company employees refused to return to work the company sought and obtained a contempt citation. As a result of the confusion local 6's executive board met on March 10, 1975 and voted to request its international union to place local 6 under trusteeship. The trusteeship was instituted by the international union the following day. Joe Rajcevich, an officer with the international union, was named as trustee.

Rajcevich promptly removed all officers of local 6. Plaintiff was however reinstated for two weeks while Rajcevich consulted with counsel regarding his authority to legally remove plaintiff. After two weeks Rajcevich finally discharged plaintiff. This suit for plaintiff's wages followed.

Other facts can be more appropriately given as they relate to the specific assignments.

I. Defendant's first assignment assails a trial court ruling which denied a motion for directed verdict. The motion was grounded on plaintiff's admitted failure to exhaust internal union remedies prior to bringing suit.

Plaintiff was a member of local 6. It is claimed he thereby became bound to its rules and regulations. Under Art. I, § 3, of the by-laws of local 6 the affairs of the local are governed by the constitution and by-laws of the international union. Under Art. IV, § 1, of the local union's by-laws, disciplinary action by the local union could be undertaken only in accordance with the international union's by-laws.

Under the constitution and by-laws of the international union there is a detailed procedure by which any member of the local union, who is adversely affected during trusteeship, may appeal the action of either the local or international union. No such appeal was undertaken by plaintiff. This

failure is claimed by the local union as a bar to plaintiff's right of recovery.

Plaintiff meets the local union's contention by four alternative arguments. See generally 48 Am.Jur.2d, Labor and Labor Relations, § 334, pp. 251–253; 51 C.J.S. Labor Relations § 129, pp. 828–833. First, plaintiff argues any requirement to exhaust internal union remedies is discretionary with the courts. His second argument asserts exhaustion of the internal union remedies in this case should not be required where it is apparent the procedures would prove futile. He contends it would have been futile to seek union review of the union's position. Plaintiff's third argument is that his status in this dispute was not as a union member but rather as an employee. He believes the appeal provisions were inapplicable to him as an employee. Finally plaintiff maintains local 6 itself failed to follow the procedures of its constitution and by-laws. No formal notice of specific acts of misconduct, or specific charges against plaintiff, or notice of hearing were served as required by the rules.

It is unnecessary for us to consider any of plaintiff's first three assertions because we may rely on his final one. We agree local 6 is in no position to complain of plaintiff's failure to exhaust union remedies where the union had itself failed to comply with the same constitutions and by-laws by setting hearing and giving plaintiff notice of hearing on plaintiff's discharge.

Article VIII, § 1, of the by-laws of the international union, which the local union seeks to apply to plaintiff, provided in part " * * * no officer shall be removed from office without proper notice of charges and a fair opportunity to be heard in defense before an impartial tribunal of the organization. * * *." It is clear there was no attempt by the trustee to comply with this provision when plaintiff's employment was terminated.

Both parties cite our opinion in Nissen v. International Brotherhood of Teamsters, Chauffeurs, Stablemen, & Helpers of America, 229 Iowa 1028, 295 N.W. 858 (1941) as authority for their positions. We believe Nissen supports plaintiff's view.

The facts in Nissen were typical of those cases under which controlling principles were developed. The union and company contracted for a closed shop; union membership was necessary for continued employment. A strike was called and then enjoined the following day on application by the company. The company then called its employees back to work, explaining the strike was over. The workers responded to the call and returned to work. Within several days the members were notified to appear before the executive board of the union for violating the union's constitution. Upon summary hearing the employees lost their membership and hence their jobs. Thereafter they brought an equitable action to restore their union memberships and for damages. They prevailed.

In our opinion we considered the claim internal remedies must be exhausted before suit can be brought. We said:

" * * * Such remedies need be exhausted before resort to the courts only where the question is purely social, involving discipline or the conduct or standing of a member. But, if property rights are involved, in the absence of an express agreement to exhaust the remedies provided within the association, the member may resort to the courts without using the within-the-Union remedies. And where property rights are involved the member need not first pursue the remedies within the association, if they would be futile, illusory, or vain. (Authorities).

"Also, if the action of the association is wrongful, or without jurisdiction, *or is without notice or authority, or not in compliance with the rules or constitutional provisions,* or is void for any reason, the obligation to appeal within the order is not imposed, but the complaining one may resort directly to the courts. *The rule contended for is applicable only when the organization has acted strictly within the scope of its powers.* (Authorities)." (Emphasis added.) Nissen, supra, 229 Iowa at 1042–1043, 295 N.W. at 866–867.

■ In applying these principles to the instant case plaintiff was not required to exhaust internal union remedies before suing the union where the union itself had not discharged him in accordance with the constitution and by-laws which provided that same remedy. The union's first assignment is without merit.

II. For its second assignment the union argues the trial court erred in failing to find as a matter of law plaintiff could be removed from office without cause and without liability for breach of contract. The union urges such a conclusion on the ground plaintiff's employment was subject to the terms and conditions of the international union's constitution and by-laws.

■ It is true a trusteeship may be established and administered by a labor organization over its subordinate body only as provided by the constitution and by-laws of the organization assuming trusteeship. 29 U.S.C.A. § 462. See 48 Am.Jur.2d, Labor and Labor Relations, § 89, pp. 111–112. It is also clear, as the union argues, international unions are permitted to impose trusteeships over local unions for limited but important reasons. One such reason is to assure that the local union carries out its duties under a collective bargaining contract.

Local 6 argues that to allow damages to plaintiff for his removal would not encourage industrial peace nor discourage illegal activity. To allow damages, it is said, would render unions less inclined to impose valid trusteeships because such actions might result in a damage award.

As authority for this assignment the union cites *Attig v. International Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers of America,* 231 Iowa 1, 300 N.W. 636 (1941); *Plentty v. Laborers' Union,* 83 L.R.R.M. 2328 (U.S.D.C.E.D.Pa.1973); *Martin v. Masters, Mates & Pilots,* 50 L.R.R.M. 2813 (Sup.Ct.N.Y.1961). However we find these cases inapplicable. *Attig* is not in point. *Plentty* holds only that a union officer removed under trusteeship had no remedy in federal court. *Martin* dealt with the circumstances justifying removal of local

union officers and not with financial responsibility which might attend such a removal.

■ In the instant case no one disputes the authority of the international union to remove plaintiff from office. However the jury found no failure by plaintiff in the performance of his duties. Under these circumstances we believe the policy interests mentioned by the union are sufficiently supported by the power of removal. The union removed plaintiff without cause. In doing so it became liable to him for damages.

Defendant's second assignment is without merit.

III. In its final argument local 6 argues the jury's verdict was unsupported by the evidence. The basis for this assignment is the belief there was ample cause as a matter of law for plaintiff's removal because plaintiff's conduct stood contrary to the interests of the union. Local 6 relies on *La-Fontaine v. Developers and Builders, Inc.,* 261 Iowa 1177, 156 N.W.2d 651 (1968); *Miller v. Jones,* 178 Iowa 168, 159 N.W. 671 (1916).

It is said plaintiff knew and understood the wildcat strike was illegal and yet cooperated with the executive board by instituting it and consequently his discharge was with cause. Local 6 also asserts the evidence showed plaintiff, disregarding instructions by the international, failed to arrange a meeting with the employer to attempt to resolve the dispute. In short local 6 urges the undisputed testimony before the jury showed plaintiff took no steps to discourage, but actually promoted, the illegal wildcat strike.

■ The burden was upon the union to prove plaintiff was guilty of disobedience, misconduct, incompetence, or other grounds which would justify his dismissal. *LaFontaine,* supra, 261 Iowa at 1187, 156 N.W.2d at 658. "Findings of fact in a law action, which means generally any action triable by ordinary proceedings, are binding upon the appellate court if supported by substantial

evidence." Rule 14(f)(1), Appellate Rules of Procedure.

There was ample evidence by which the jury could find the union failed to meet its burden. There was testimony plaintiff instructed the workers to strike only because the executive council of local 6 ordered him to do so. Plaintiff did not have a vote at executive board meetings.

The president of local 6 testified plaintiff performed all duties and obligations as business representative until discharged. The witness knew of no reason justifying termination of plaintiff's employment and did not feel plaintiff in any way caused the wildcat strike.

The trial court did not err in refusing to find as a matter of law that the union had just cause to terminate plaintiff's employment. The contention to the contrary is without merit.

As all of local 6's assignments are without merit the judgment of the trial court is affirmed.

AFFIRMED.